(June 10, 1909.)

# GEORGE S. SPEER, Plaintiff, v. JAMES STEPHENSON, Jr., State Engineer, Defendant.

[102 Pac. 365.]

CONSTITUTION—APPROPRIATION OF WATER—LEGISLATIVE CONTROL—STATE ENGINEER—JUDICIAL POWER—CONTEST OF PERMIT—NOTICE OF HEARING—DUE PROCESS OF LAW.

1. The constitution of this state reserves to the state the right to regulate and control the manner and means of appropriating the unappropriated waters of the state.

2. Under the constitution, the legislature may prescribe the means and methods by which water may be diverted, appropriated and applied to a beneficial use, and where it is sought to appropriate the public waters of the state in accordance with the provisions of the statute, the appropriator is required to comply with the terms and provisions of the statute in order to perfect such appropriation.

3. Under the provisions of the act of March 11, 1903, the permit, when granted as therein provided for, gives the applicant an inchoate right, which will ripen into a legal and complete appropriation only upon the completion of the works and the application of the water to a beneficial use.

4. The right given by such permit may ripen into a complete appropriation or may be defeated by the failure of the holder to comply with the requirements of the statute.

5. The permit, therefore, is not an appropriation of the public waters of the state, but is the consent of the state given in the manner provided by law to construct and acquire real property.

6. The act of March 11, 1909, which provides for a contest of a permit issued, and vesting power in the state engineer to cancel such permit, does not vest in the state engineer judicial power.

7. The granting, as well as the cancellation and voiding of permits, under the statute, are acts of administration, and are clearly within the power which may be given to the state engineer in supervising and administering the law regulating the appropriation of the public waters of the state.

8. The action of the state engineer, in deciding to cancel or in refusing to cancel a permit, is not conclusive upon the parties, and may be reviewed in the district court upon appeal or may be questioned in a direct proceeding in the district court, and the court in considering such matter is in no way controlled or concluded by the action of the state engineer.

9. The only effect given by the statute to the action of the state engineer in canceling or refusing to cancel a permit is, that such action is thereby fixed as a time from which the statute of limitations begins to run within which an action may be brought in the district court, or an appeal taken from the action of the state engineer, involving the questions involved in the contest before the state engineer.

10. In the proceeding to contest a permit, no affirmative relief can be demanded or granted; the action is informal. The ordinary rules of evidence do not apply. The state engineer is authorized to make personal examination and in deciding may be governed thereby; no injury to the petitioner or his property is required to be alleged or proven. The action does not result in the issuance of any writ or process known to the law. The procedure is entirely different and distinct from that prescribed for actions brought in the courts; the proceeding is purely administrative to aid in carrying out and administering the law regulating and governing the appropriation and application of water to a beneficial use, and is not judicial in character or effect.

11. The statute, providing for the recording in the state engineer's office of a permit and that a contest may be brought against the same, and requiring notice to be given to all persons shown to have an interest in said permit as shown by the records of the state engineer's office, provides for due process, as the records may be relied upon as showing the persons who claim or have an interest in said permit.

12. Where the statute provides that an applicant for a water permit must state in the application the last known postoffice address, notice sent to such postoffice address is sufficient in the absence of a showing that the same has been changed.

13. Notice of contest sent by registered mail to the last known postoffice address of the persons or corporation, to whom a water permit has been issued, of the time of hearing such contest before the state engineer, is sufficient notice and due process.

14. Where the statute provides for an appeal from the decision of the state engineer, in a contest of a water permit, and provides that the appellant shall deliver personally or by registered mail a copy of the notice of appeal in the manner prescribed for the personal service or service by publication of a summons, it is sufficient notice to protect the rights of all parties concerned, and to give such persons full opportunity for a proper hearing in the courts established by the constitution of the state, and is due process of law.

15. The fact that in a statute the word "contestant" is used where it clearly appears that the word "contestee" was intended, is an

error which will not render such statute so indefinite or uncertain as to be void or unconstitutional.

(Syllabus by the court.)

Original proceedings in this court for writ of prohibition. Demurrer and motion filed to the petition. *Sustained.*

N. M. Ruick, for Petitioner.

Said act assumes to confer judicial functions upon an administrative officer in violation of sec. 2, art. 5, of the constitution, in that the state engineer is empowered to hear, try and determine a question involving the right of private property and to enter an order depriving the owner or claimant thereof.

Said proceeding is in violation of those provisions of the constitution and of the statutes requiring uniformity in judicial proceedings, and in conflict with the usual course of judicial procedure which requires an action to be maintained by and against the real parties in interest.

The act provides that a water permit may be voided at the instance of any person holding a "junior permit." This limits the right of action to a class; it also usurps the functions of the state, which alone can maintain an action for cancellation or forfeiture.

This act is unconstitutional, in that the state engineer is authorized to procure jurisdiction of the person and to, settle by his order and decision valuable property rights; not by service of summons or notice as provided by the general law of the state, which operates alike upon all citizens of the state and others desiring to have their titles quieted, *but by a special, limited and constructive service which is not permitted by the general laws.*

Each individual diverting and appropriating water from a natural stream acquires a property right. These rights may be of different grade and value, but they are property just the same. Of this property they cannot be deprived. Neither can they deprive another thereof, but by due process of law. In determining the rights and interests of two or more individuals to the same property, due process of law

requires that the usual course of judicial procedure in the nature of actions to quiet title and to settle adverse claims shall be pursued.

A majority, if not all, of the points made by petitioner against the validity of the proceeding in question before the state engineer are upheld and sustained by the decision of the court in the case of *Bear Lake County v. Budge,* 9 Ida. 703, 108 Am. St. 179, 75 Pac. 614, and the cases cited in the opinion, particularly *State v. Guilbert,* 56 Ohio St. 575, 60 Am. St. 756, 47 N. E. 551, 38 L. R. A. 519.

D. C. McDougall, Attorney General, John F. MacLane, and J. H. Peterson, Assistants, for Defendant.

The act does not vest judicial power in the state engineer. (*Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 87 Am. St. 918, 61 Pac. 258, 50 L. R. A. 747; *People v. Simon,* 176 Ill. 165, 68 Am. St. 175, 52 N. E. 910, 44 L. R. A. 801; *Tyler v. Court of Reg.,* 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; *Boise Irr. etc. Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321.)

The notice by registered mail in the proceeding before the state engineer is sufficient as a compliance with the constitutional guaranty, and if it is not in itself enough, the act is saved by the requirement of personal service of notice prior to the taking of appeal. (*Tyler v. Court of Reg., supra; Farm Investment Co. v. Carpenter, supra.*)

"The notice and hearing requisite are present generally when the person whose life, liberty or property is to be taken has, upon reasonable notice, at some stage of the proceedings, an opportunity to present objections to the proposed action, before a tribunal authorized to give effect to the objections, if it regards them as valid." (McGehee, Due Process of Law, 76; *Louisville R. Co. v. Schmidt,* 177 U. S. 230, 20 Sup. Ct. 620, 44 L. ed. 747; *Wilson v. Standefer,* 184 U. S. 399, 22 Sup. Ct. 384, 46 L. ed. 612; *Atlantic & Pac. R. Co. v. Mingus,* 165 U. S. 413, 17 Sup. Ct. 348, 41 L. ed. 770.)

What is obviously intended in sec. 6 in place of the word "contestee" is "contestant." This plainly appears, not only from the language of this section itself, but from

the whole act. "Legislative enactments are not any more than any other rights to be defeated on account of mistakes, errors or commissions, provided the intention of the legislature can be collected from the whole statute." (2 Sutherland Stat. Const., sec. 410; *In re Frey,* 128 Pa. 593, 18 Atl. 478; *Palms v. Shawano Co.,* 61 Wis. 211, 21 N. W. 77; *Territory v. Ashenfelter,* 4 N. M. 85 (93), 12 Pac. 879; *Chapman v. State,* 16 Tex. App. 76; *Brinsfield v. Carter,* 2 Ga. 143; *Hutchings v. Bank,* 91 Va. 68, 20 S. E. 950.)

STEWART, J.—This is an original application for a writ of prohibition, restraining the state engineer from proceeding to hear and determine a contest instituted under the provisions of an act approved March 11, 1909, for the cancellation of a water permit, and involves the constitutionality of said act.

The objections made to said act are: First, that it confers judicial power upon the state engineer in violation of the constitution, art. 2, sec. 1, and art. 5, sec. 2; second, that the procedure prescribed is not due process of law, as that term is used in the state and federal constitutions; third, that the use of the word "contestant" in sec. 6, when the word "contestee" should have been used, renders the act uncertain, ambiguous and contradictory to such an extent as to destroy its effect.

Before taking up these propositions, it is proper to observe that the act attacked relates wholly to contests of permits issued by the state engineer for the construction of works and the appropriation of the public waters of this state in accordance with law. In dealing with this question, therefore, we shall treat the appropriation of water, to which we refer, as an appropriation attempted to be made or made in accordance with the requirements of the statute and shall not discuss the rights of an appropriator, if such can be acquired without complying with the terms of the statute.

Sec. 1, art. 15, of the constitution, provides:

"The use of all waters now appropriated, or that may hereinafter be appropriated for sale, rental or distribution; also of all water originally appropriated for private use,

but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law.''

Sec. 3 of the same article provides:

''The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied. Priority of appropriation shall give the better right as between those using the water.''

These constitutional provisions have been construed by the legislature and by this court as reserving to the state the right to regulate and control the manner and means of appropriating the unappropriated waters of the state. A large part of this state is situated in an arid belt, and the appropriation and application of water to a beneficial use becomes one of the most important concerns of the state. Because of this fact, the people in adopting the constitution recognized that the public waters of the state should be committed to legislative control, and in so doing declared that the right to divert and appropriate the unappropriated waters of any natural stream to a beneficial use should never be denied. While the legislature is given power to regulate the manner and method of appropriating and applying to a beneficial use the public waters of the state, they must do so in such manner that the right to divert and appropriate will not be denied.

The first statute enacted by the legislature after the adoption of the constitution was approved March 7, 1895 (Laws 1895, p. 174), in which it was provided:

''The right to the use of any of the public waters of this state may be acquired by appropriation which must be for some useful or beneficial purpose.''

Then follow the steps prescribed by the statute which must be taken by any person or corporation intending to appropriate any of the public waters of the state. This act remained the law of the state until February 5, 1899, when another statute was enacted covering the subject and which repealed the act of 1895. This latter act (Laws 1899, p. 380) in sec. 2 provided:

"The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters, may be acquired by appropriation."

Then follow the steps prescribed by the statute in order to perfect an appropriation. On March 11, 1903 (Laws 1903, p. 223), another act was passed which provided a complete scheme for the appropriation of the public waters and repealed all former statutes. Sec. 41 of this act reads as follows:

"All rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this act. And after the passage of this act, all the waters of this state shall be controlled and administered in the manner herein provided, and all acts or parts of acts which may be in conflict with this act are hereby repealed."

This latter act provides that any person, association, or corporation intending to acquire the right to the beneficial use of the waters of any natural streams of the state, before commencing the construction of their works, shall make application to the state engineer for a permit to make such appropriation. The statute specifies what the application shall contain and that it shall be accompanied by plats, maps, etc., showing the proposed works. On receipt of the application the state engineer makes an indorsement thereon and a record in a book kept by him; and the application so indorsed shall constitute a permit and shall be returned to the applicant and he shall be authorized on receipt thereof to proceed with the construction of such works. The act further provides that on or before the date set for the completion of the works for the diversion and application of water under any permit, the holder of such permit or his assigns shall be prepared to submit proof of the completion of such works to the state engineer. Then follows the form of procedure and the proof to be made; and sec. 8 provides:

"Upon receipt by the state engineer of all the evidence in relation to such final proof, it shall be his duty to carefully examine the same, and if he is satisfied that the law has been fully complied with and that the water is being

used at the place claimed and for the purpose for which it was originally intended, he shall issue to such user or users a license confirming such use. . . . . Such license shall bear the date of the application for, and the number of the permit under which the works from which such water is taken were constructed, . . . . and also state the date of the priority of the right confirmed by such license, which shall be the date of the application for the permit for the construction of the works from which such water is taken and to which such right relates.''

This latter act was amended on February 23, 1905 (Laws 1905, p. 357), and also by an act approved March 13, 1907 (Laws 1907, p. 314). These amendments, however, while important taken in connection with the entire act, are unimportant in so far as the questions involved in this particular case are concerned.

The act of 1899, *supra,* was under consideration by this court in the case of *Sandpoint etc. Co. v. Panhandle etc. Co.,* 11 Ida. 405, 83 Pac. 347, in which this court said:

''In such case the appropriation is initiated by the posting of the notice, and an inchoate right thereby arises which may ripen into a legal and complete appropriation upon the final delivery of the waters to the place of intended use. In other words, by pursuing the successive steps prescribed in the statute and completing his diverting works and applying the water to a beneficial purpose, the appropriation is completed. . . . . It appears that the lower court proceeded on the theory that the appropriation, regardless of the posting of notice, dates from the actual diversion of the water and its application to the use intended, and the court accordingly finds. . . . . This theory is incorrect as applied to appellant so long as appellant continued to prosecute its work with reasonable diligence. So long as it did so, it was entitled to have its appropriation relate back to the posting of its notice, and in that event appellant would be entitled to protection as a prior appropriator as against the respondent.''

In the case of *Boise Irrigation etc. Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321, this court had under consideration

certain features of the irrigation act approved March 11, 1903, and in that opinion held that the term "public waters" as used in said act refers to all water running in the natural channel of the streams; and the state may by proper legislation regulate the appropriation and use thereof, and that private rights authorized by the law were simply to the use of the public waters and not an ownership in them, at least while they were flowing in the natural channel.

In the recent case of *Idaho Power & Trans. Co. v. Stephenson, ante, p.* 418, 101 Pac.° 821, this court had under consideration the procedure required by the statute before the state engineer, under the act of March 11, 1903, *supra,* with reference to completing an appropriation of water and in which this court said:

"By the adoption of our state constitution, all of the unappropriated waters at that time were declared to be public waters, and it matters not through or over whose land they flow. The legislature has full authority to provide the method and procedure of appropriating such waters to a beneficial use by all persons and corporations." (See, also, *Wilterding v. Green,* 4 'Ida. 773, 45 Pac. 134.) It thus appears that the legislature and also this court recognize the power in the legislature to prescribe the methods and means by which water may be diverted, appropriated and applied to a beneficial use. In this connection counsel for the petitioner contends that the legislature is prohibited by the provisions of sec. 3, art. 15 of the constitution, from passing laws which by their terms attempt to regulate the manner and means of appropriating the unappropriated waters of the state.

This argument is based upon the language used in sec. 3:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied."

Whether the right to appropriate water from the streams of this state can be acquired in any method other than that pointed out by the statute is not involved in this case, as the statute under consideration only attempts to deal with persons attempting to appropriate water under the provi-

sions of the statute and the rights acquired thereby. The contest provided for by the act of March 11, 1909, is a contest against a permit issued under the provisions of the statute. The contest is not against a right to the use of water by appropriation independent of the statute. Not only that, but the contestant and contestee, as shown by the petition in this case, were claiming to have acquired rights by virtue of a compliance with the provisions of the statute. So we shall dismiss from any consideration in this case the rights, if such can be acquired, of a person or corporation attempting to appropriate water independent of the provisions of the statute.

Under the statute as it existed prior to 1903, an appropriation was initiated by posting a notice at or near the point of intended diversion, stating certain facts; and an inchoate right thereby arose which would ripen into a legal and complete appropriation upon the final delivery of the waters to the place of intended use. As a substitute for the notice thus provided for, the legislature in 1903 provided that a person or corporation contemplating the appropriation of water should make application to the state engineer and receive a permit from him to construct certain works and appropriate and apply the water to a beneficial use. The permit thus provided for took the place of the posting of notice as required under the act prior to 1903, and merely gave the applicant an inchoate right which could ripen into a legal and complete appropriation only upon the completion of the works and the application of the water to a beneficial use. The right given by the permit is merely a contingent right, which may ripen into a complete appropriation or may be defeated by the failure of the holder to comply with the requirements of the statute.

The permit, therefore, is not an appropriation of the public waters of the state. It is not real property under the statute. (Rev. Codes, sec. 3056; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.*, 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485.) A permit, however, is the consent given by the state to construct and acquire real property. In order to acquire a permit the statute provides that the person,

association or corporation, intending to acquire the right to the beneficial use of the waters of any natural stream, etc., before commencing the construction of such works, shall make application to the state engineer for such permit. Certain facts are required to be stated in the application, and the application must be accompanied by a plat and a map of the proposed works, and if a corporation, certain facts shall be stated; and on receipt of the application, if in proper form, the state engineer is required to make an indorsement thereon which shall constitute the permit.

It will thus be seen that the state engineer is given power and jurisdiction to determine certain matters before the permit is issued. The act of March 11, 1909, provides a method of contesting a permit so issued, and this brings us to the first contention made by counsel for the petitioner, that this act attempts to confer judicial power upon the state engineer in violation of sec. 1, art. 2 of the constitution, which reads as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

And also sec. 2, art. 5:

"The judicial power of the state shall be vested in a court for the trials of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the supreme court as may be established by law for any incorporated city or town."

The inquiry, then, is: Does the act of March 11, 1909, give to the state engineer judicial power?

If, under the constitution, the legislature may regulate the manner and means of appropriating the public waters of the state and give to the state engineer the power and authority to grant permits upon applications being made in proper form, we can see no reason why the legislature may not also vest the state engineer with power to cancel

such permit when it is shown to him and he ascertains from
personal examination that the permit has not been complied
with. The granting as well as the cancellation and voiding
of permits are acts of administration, and clearly within the
power which may be given to the state engineer in super-
vising and administering the law regulating the appro-
priation of the public waters.

While it is true the state engineer is called upon to exer-
cise his judgment and decide whether the holder of the
permit has complied with the law, this fact alone would
not make his acts judicial. All administrative officers are
called upon at times to exercise judgment and to decide
questions, but when the judgment is exercised as a means
of administering the law, the act is administrative rather
than judicial. The contestant is required to file a petition
setting forth the facts upon which he bases his plea for
cancellation, stating wherein the holder of the permit, which
it is sought to cancel, has failed to comply with the law
and the permit. The relief sought is the cancellation of the
permit. No affirmative relief can be demanded or granted;
the proceeding is informal. No provision is made for testing
the sufficiency of the petition and no answer is required.
Evidence is permitted to be presented by affidavit. The
state engineer is authorized to make an examination, and in
rendering his decision may be governed by the examination
made. The procedure is entirely different and distinct from
that prescribed for actions brought in the courts of the state.
The petitioner is not required to allege or prove any injury
to himself or his property, or any facts which would con-
stitute an action at law or entitle the petitioner to relief
in equity. The action does not result in the issuance of
any writ or process known to the law for the purpose of
preventing the invasion of the petitioner's right or to put
the petitioner in the possession of any right.

Under the statute the permit is granted upon application
setting forth certain facts. It may be canceled upon peti-
tion setting forth certain facts with proof by affidavit and
aided by the examination of the state engineer. The power
and duties of the engineer with reference to hearing the con-

test and canceling the permit are pure matters of administration. He is in no way authorized to decide or determine what rights, if any, the permit holder has acquired under the permit, or by virtue of any acts taken in connection with the construction of the works authorized by the permit, or the diversion or appropriation of water in connection therewith. Any party aggrieved by the decision of the engineer may appeal to the district court or commence an original action in said court for the determination of the questions involved in the proceeding before the state engineer. The only effect given by the statute to the acts and decision of the engineer is that any party aggrieved by said decision may, within ninety days from the date of the decision, either appeal to the district court or commence his original action.

It thus appears that the only effect in law given to the action of the engineer is to fix a time from which the statute of limitations begins to run within which an appeal may be taken or an original action commenced. The rights of the parties are fully preserved by the provisions of the act, and full opportunity given to have determined in the courts of the state all questions involved upon the hearing before the state engineer. If any rights have been acquired by the holder of a permit the same cannot be taken away by the decision of the state engineer, but full opportunity is given to all parties concerned to have such matters determined in the proper court. This statute nowhere attempts to deprive the courts of the state of the jurisdiction conferred upon them by the constitution. In fact, the act specifically provides for a review of the action of the state engineer in the courts, and also an action may be brought without first proceeding in the office of the state engineer in the manner prescribed in section 2 of the act.

In the case of *Boise Irr. etc. Co. v. Stewart, supra*, this court had under consideration the provisions of the act with reference to the state engineer taking proof, making an examination of the works and the determination of the completion of such works, and in that case said:

"While the provisions of those sections authorize the state engineer to pass upon and decide certain questions and matters, in the first instance, they in no way conflict with the provisions of the said section of the constitution. If anyone is aggrieved by the decision of the state engineer, he has the right to appeal to the district court."

So in hearing a contest, while the state engineer is authorized to pass upon and decide in the first instance whether the permit holder has complied with the law and the terms of the permit, such decision does not deprive any party aggrieved of his right of action in a proper court. The statute does not attempt to make the action of the state engineer in any way bind or control the courts in determining the same matters.

In the case of *Raaf v. State Board,* 11 Ida. 707, 84 Pac. 33, this court had under consideration the power and jurisdiction of the state board of medical examiners in refusing to issue a license to an applicant therefor and held:

"A careful examination of the powers and authority granted the board will at once disclose the fact that it is called upon to exercise judgment and discretion in every instance where an application is made for a license on examination. . . . . These are questions of fact to be determined by the board. . . . . The powers and authority to be exercised by various boards of this character have been frequently considered by the courts, and it has been generally held that they exercise discretionary and *quasi* judicial functions."

In the case of *In re Inman,* 8 Ida. 398, 69 Pac. 120, this court had under consideration an act providing for a state board of medical examiners, granting to such board the power to examine applicants for medical license, and held that such act did not vest judicial power in the board of examiners and was not unconstitutional.

In the case of *Drake v. Doyle,* 40 Wis. 175, 22 Am. Rep. 692, the supreme court of that state, in discussing the power to grant and revoke license to an insurance company to do business within that state, said:

"We cannot think that either the power to grant a license or the power to revoke it involves the exercise of a judicial function. Both appear to us to be plainly and equally ministerial functions. The secretary, upon certain facts appearing to him, is authorized to issue a license; upon certain other facts appearing to him, is required to revoke it. This is a common condition of ministerial duty. In such a case, the ministerial officer must exercise his personal intelligence in ascertaining the fact upon which his authority is founded; but he acts upon his peril of the fact, and can in no sense be said to exercise a judicial function. If the use of personal judgment in such cases should be held to be judicial, the distinction between ministerial and judicial functions would be very much removed."

This language, it would seem, may be applied with great force to the act now under consideration. Whatever rights either the contestant or contestee may have are rights claimed to have been acquired or lost under the statute. If the state engineer was rightly vested with power in the administration of his office to determine the sufficiency of an application to construct works and appropriate water, he can, upon the same basis of reasoning, be vested with power to say that the holder of such permit has not performed the conditions required by such permit.

In the case of *Hartford Fire Ins. Co. v. Raymond,* 70 Mich. 485, 38 N. W. 474, the supreme court of Michigan had under consideration an act which conferred power upon the insurance commissioner to revoke the license and authority granted to the insurance company to do business in that state, and in which the court said:

"It is claimed, however, that the act is unconstitutional because it attempts to confer judicial power on the commissioner of insurance, who is a member of the executive department of the state government, and that the act attempts to confer summary and arbitrary power upon such commissioner, to revoke the authority to do business within this state. The power of the commissioner, however, under this act to grant a license or revoke it, is but ministerial

in its nature, and not the exercise of judicial functions. The commissioner, upon certain facts being made to appear to him, is authorized to issue the license, and upon certain other facts being made to appear, he is required to revoke it. This is a common condition of ministerial duty.''

By this statute, where a permit has been granted by the state engineer, permission is also granted to any person holding a permit postdated to present facts showing that the holder of the permit has not complied with the law, and authorizes the state engineer, if he finds that the law has not been complied with, to cancel such permit. This is purely a ministerial duty connected with the administration of the law as it is imposed upon the state engineer.

A very exhaustive discussion of this question may be found in the case of *Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 87 Am. St. 918, 61 Pac. 258, 50 L. R. A. 747. See, also, *Ewing v. Mining Co.,* 56 Cal. 648. Many other authorities might be cited which deal with the power exercised by an officer in the administration of his office, but we believe the true rule to be, that when a ministerial officer is called upon to decide and determine matters arising in the administration of his office, when such acts are not made final or binding upon the courts of the state, and full opportunity is given to any person aggrieved to have such matters adjudicated in the proper tribunals of the state, the acts of such officer are ministerial and not judicial.

Counsel for plaintiff earnestly contend that the principle of law and reasoning found in the case of *State ex rel. Monnett v. Guilbert,* 56 Ohio St. 575, 60 Am. St. 756, 47 N. E. 551, 38 L. R. A. 519, is directly applicable and decisive of the questions involved in this case. In that case the supreme court of Ohio had under consideration the constitutionality of a statute known as the Torrens Land Title law. The act provided that as to all lands within its operation the registration of title should be substituted for the system of registering deeds formerly in operation in that state, and that every registered title should at once become indefeasible in the hands of the purchaser for value from the registered owner. The act further provided for

application to register made in writing and filed with the clerk of the court of common pleas in the county where the land was situated. Referees were provided for to determine questions arising on applications.    Surveys and abstracts were required and the court authorized to establish rules for procuring the abstract. The act is very lengthy, and it would consume too much space to attempt to set out its provisions in this opinion. In that case the claim was made that the act was unconstitutional because it conferred judicial power upon the recorder, a ministerial officer. In discussing the power the act gave to the recorder the court says:

"The principal powers conferred are to take proof after notice to the holder that a mortgage has been discharged, and, after a hearing, to enter a discharge upon the register; to make an entry that a lien has become inoperative in law by reason of limitation of time when application has been made therefor, the person interested notified, and he is satisfied that such is the fact; to correct memorials made or issued by mistake, if the rights of *bona fide* purchasers or lienholders for value have not intervened. It is true that the power to ascertain and decide is not necessarily a judicial power; and it is frequently exercised by ministerial officers and legislative bodies. Whether the power to hear and determine is judicial depends upon the nature of the subject of the inquiry, the parties to be affected, and the effect of the determination. While it is not supposed that any definition of judicial power, sufficient for all conceivable cases, has ever been attempted, it is clear that 'to adjudicate upon, and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department.' . . . . Recurring to the duties of the recorder under the act, he is not merely to enter the evidence furnished by the agreement of the parties that a lien has been discharged, or that it has become void by the lapse of time, or that a mistake has intervened touching their rights, but he is to apply the rules of evidence to the ascertainment of disputed facts, to apply the rules of law concerning payment,

to interpret and apply the statute of limitations as it may affect the enforcement of liens, including such questions of disability as may arise, to decide the questions of law and fact that may arise in determining whether mistakes have intervened, and who are *bona fide* purchasers; and then to make an entry which is to have the same effect in concluding the rights of the adversary parties as would a decree in equity. That these are judicial powers is entirely clear.''

It will thus be seen that there is a very great and wide distinction between the powers conferred by the act under consideration in the Guilbert case and the powers conferred by the act under consideration in this case. The very elements of power exercised by the recorder in the Guilbert case and which made his acts judicial in their character are wanting and not to be found in the act under consideration as given to the state engineer. The state engineer is not called upon to apply the rules of evidence to the ascertainment of disputed facts, but only to receive affidavits and make personal examination, and even upon the latter alone may base his conclusion. He is not called upon to construe the law or apply the law, but is limited in his power to an examination of the facts as to whether the permit has been complied with. His decisions do not in any sense or in any way have the concluding effect, as to the rights of the parties, as would a decree of a court. We are clear that the powers given the recorder, in the statute under consideration in the Guilbert case, are not given to the state engineer in the case under consideration, and for that reason that the Guilbert case is not an authority which should control or govern the case now under consideration. We are satisfied that the powers conferred upon the state engineer by the act of March 11, 1909, are at most but *quasi* judicial, and such powers as may be conferred upon a ministerial officer in the due administration of his office.

This brings us to a consideration of the second question presented: Does the procedure prescribed by the act constitute due process of law?

Sec. 2 of the act provides that upon a petition being filed with the state engineer, setting forth the facts upon

which the cancellation is demanded and wherein the holder
of the permit, which is sought to be canceled, has failed to
comply with the law, the state engineer shall issue a notice
naming the petitioner, the contestant, and all persons shown
by the records of the state engineer's office to have any
claim of title or interest in the permit sought to be can-
celed, as contestees, and requiring all contestees to appear
at his office on a day specified and show cause by affidavit
why said permit should not be canceled.  Such notice is
required to be sent by registered mail addressed to every
person named therein at his last known postoffice address.

It will thus be seen that the notice issued by the state
engineer is entitled in the name of the petitioner as con-
testant and all persons shown by the record to have an in-
terest in the permit as contestees.  The only record made
of the permit is the record made in the first instance at
the time the permit is issued, and therefore discloses only
the name of the party to whom the permit is originally
issued.  The record in the state engineer's office does not
necessarily contain a record of assignments of the permit
or transfers made thereof, as no provision is made for re-
cording such assignments or transfers in the state engineer's
office.  The notice, therefore, provided for by this section
is required to be given only to the party to whom the permit
is originally issued, and notice is not required to be given
to assignees or transferees of such permit unless in some
way such fact appears by the records of the state engineer's
office.

From this counsel for plaintiff argue that notice is not
required to be given to all persons interested in the permit;
that a permit is assignable and subject to transfer, and if
assigned or transferred such assignee or transferee is en-
titled to notice of the contest.

The only record required to be made of a permit is the
record in the state engineer's office at the time the permit
is granted, and it is this record which governs the engineer
in giving notice under this statute.  If the party to whom
the permit is issued assigns or transfers the same, it is con-
templated by the statute that such fact shall in some man-

ner be called to the attention of the state engineer, as the statute requires that notice shall be given to all persons shown by the records of the state engineer to have any claim of title or interest in the permit sought to be canceled. The statute, therefore, requiring notice to be given to all persons shown by the record to have an interest in the subject matter of the controversy would seem to be a full and adequate compliance with the demands of the law which require that all parties in interest shall be given an opportunity to be heard. To require that notice should be given to all assignees or transferees of the permit, when no system is provided for recording the same or method provided by which the assignees or transferees could be ascertained, would be demanding of the office an impossible task. The statute under consideration requires that notice shall be given to all persons who have or claim an interest in the permit as disclosed by the records in the state engineer's office. This is the only method from which one could determine as to who had or claimed an interest in the permit, and we believe is sufficient notice to authorize the engineer to proceed and determine the question as to whether the holder of such permit has complied with its terms.

It is next argued that the statute does not provide for due process of law because it makes no provision for giving personal notice to the holder of such permit. The statute provides, "such notice shall be sent by registered mail addressed to every person named therein at his last known postoffice address." The statute regulating the issuing of permits requires that the applicant shall state ⋅ his postoffice address. This requirement was evidently intended to furnish to the office the postoffice address of the party to whom the permit was issued, to guide the office in giving notice if any was required in the future with reference to such permit. If the postoffice address of the permit holder is altered or changed, it would seem to be the duty of such holder to advise the office of the state engineer; and until the postoffice address has been changed, we see no reason why the state engineer may not rely upon the repre-

sentations and information made to the office in the application for such permit.

It is also contended by petitioner that notice by registered mail is insufficient and does not provide due process of law, and in support of this contention of counsel the case of *Bear Lake County v. Budge,* 9 Ida. 703, 108 Am. St. 179, 75 Pac. 614, is cited and relied upon. In that case this court had under consideration a statute which authorized a water commissioner to bring an action against all persons claiming a right to the use of the waters of a stream for irrigation, domestic or other purposes, who for any reason had not been included in or whose right was not settled or adjudicated by a decree previously rendered, adjudicating and allotting the waters of any particular stream, and in which it was provided that summons might be served by publication. In that case the court was of the opinion that the action, involving the right to the use of the public waters of the state, involved property rights, and that a person could not be deprived of such property right without due process of law, and that service of summons by publication in such cases was not due process of law. The distinction between that case and this is: in that case the proceeding was in a court where the judgment of the court finally determined the rights of the parties; in this case the proceeding is not in a court but before a ministerial officer whose decision or determination of the question of fact presented to him does not conclude or bind the parties. We think the Budge case, *supra,* is clearly distinguishable from the case now under consideration, and that the rules of law controlling and governing that case are very different from those controlling and governing the question involved in this case. The procedure in this case as heretofore held is not judicial and is not governed by the laws prescribing judicial procedure. This proceeding is purely administrative, and we see no reason why the legislature may not prescribe the method of serving notice, and in so prescribing may not say that notice by registered mail addressed to the last known postoffice address of the contestee is a sufficient notice to require the contestee if he desires to appear in opposition to the procedure pending before the

state engineer. After the state engineer makes his decision the contestant and all contestees, whether they have appeared in the proceedings or not, are again notified by registered mail, addressed to the last known postoffice address, of the decision. This being a special proceeding conducted by the office in the administration of the law, we are not advised of any constitutional objection against the legislature prescribing that service by registered mail addressed to the last known postoffice address is not sufficient to support such proceedings. If the proceeding was judicial and concluded the parties, or a proceeding in the courts of the state, then we would say that the notice would be insufficient; but where the proceeding is special, administrative in character, and the conclusion of the officer rendering a decision therein does not conclude the rights of the parties, and they are left to their right of action in the courts, without in any way being influenced or controlled by the decision of the state engineer, we believe that such notice is reasonable notice and fulfills the requirements of the constitution as to due process of law.

This act further provides that any party aggrieved by the decision of the state engineer may appeal to the proper district court by filing a notice with the state engineer, "stating that he appeals from the said decision to the said court, naming it, and notifying all parties in the proceedings before the state engineer to appear at the next term of the said district court, stating the date thereof, to show cause why the decision of the state engineer shall not be vacated and annulled. The appellant shall forthwith, after filing said notice of appeal, deliver personally, or send by registered mail, a copy of said notice to each person who appeared in the proceedings before the state engineer, and serve said notice personally or by publication on all parties who did not so appear. Said personal service or service by publication shall be made in the same manner as is or may be provided by law for the service of summons in a civil action, and the order for such publication shall be made by the judge of the court to which the appeal is taken or by the probate judge of the county." By this provision the notice of appeal is required to be served personally or by publication in the same

manner that service of summons in civil actions is made; in other words, under this provision the notice must be personal where personal service can be had, and in other cases by publication.  The character of notice thus given is the same notice required to be given in an original action in the courts of the state, and thus furnishes to the appellee, or the party in whose favor the state engineer decided, the same notice as is required to be given in a civil action.  This provision fully protects all the rights of the party or parties against whom the state engineer may decide, and gives such person or persons full opportunity for a hearing in the proper court fixed and established by the constitution of the state, and provides due process of law.  As was said by this court in the case of *Eagleson v. Rubin, ante,* p. 92, 100 Pac. 765:

" 'Due process of law,' as used in sec. 13, art 1 of the constitution of this state, and also in the constitution of the United States, when applied to judicial proceedings, means that every litigant shall have the right to have his cause tried and determined under the rules of procedure, the same as are applied to similar cases, and when this is afforded to him, a defendant cannot complain that 'due process of law' is not being observed."

If this be true, there can be no question but what the notice given, as provided by the act, is sufficient to satisfy the demands of the law that due process must be provided for.

Our attention has also been called to what appears to be an error in using the word "contestant" where "contestee" was necessarily intended.  The section in part reads:

"In case the decision of the state engineer shall be adverse to the contestant and in case no appeal has been taken, etc., said state engineer shall cause to be spread upon the record copy of the permit in question an order of cancellation."

The cancellation of the permit would necessarily follow if the decision was against the contestee but would not follow if the decision was against the contestant; and from this language it clearly appears that "contestee" was intended where "contestant" is used, but this error in writing or print-

ing the act we do not think is sufficient to render the same void or unconstitutional.

From what has been said it follows that the act in question is not subject to the constitutional objections made against it, and that the demurrer should be *sustained.*   Costs awarded to *defendant.*

Sullivan, C. J., concurs.

Ailshie, J., did not sit at the hearing or take part in this opinion.