## ROBINSÓN et al. v. SCHOENFELD et al.

No. 3842.   Decided September 18, 1923.   (218 Pac. 1041.)

1.  WATERS AND WATER COURSES—USE OF SPRINGS FOR WATERING
    RANGE STOCK HELD NOT SUFFICIENTLY EXCLUSIVE TO CONSTITUE
    VALID "APPROPRIATION."   Use of springs as a watering place
    for range cattle by claimants of the water rights in such
    springs and their predecessors in interest *held* insufficient
    alone to establish an appropriation thereof, in the absence of
    any showing that their use was to the exclusion of others hav-
    ing stock at large upon the public domain, or that the springs
    were subject to the complete domain and control of claimants.[1]

2.  WATERS AND WATER COURSES—IMPROVEMENTS ABOUT SPRING
    WITHOUT POSTING OR RECORDING NOTICE HELD NOT SUFFICIENT
    "APPROPRIATION."   The placing of pipes from a spring to a
    nearby reservoir with intent that the water impounded should
    be used in irrigating a small orchard *held* insufficient alone
    to establish an appropriation of water rights in spring in the
    absence of the posting or recording of any notice as required
    by R. S. 1898, § 1268, or the filing of any application in the
    state engineer's office as required by Laws 1903, c. 100, § 35,
    and Laws 1919, c. 67, § 42.

3.  WATERS AND WATER COURSES—PROOF BY DEFENDANT OF HIS
    FILING OF APPLICATION FOR WATER ADMISSIBLE IN ACTION TO EN-
    JOIN FOR INTERFERENCE THEREWITH.   In an action to enjoin the
    interference with certain water rights proof by defendant of
    the filing by him of an application for the appropriation of
    such water rights with the state engineer as required by Laws
    1919, c. 67, § 42, *held* admissible.

Appeal from District Court, Sixth District, Kane County;
*Wm. F. Knox,* Judge.

Action by O. A. Robinson and Alice Robinson against Rex
Schoenfeld and the State of Utah.   From a judgment for
plaintiffs, defendant Schoenfeld appeals.

REVERSED AND REMANDED.

[1] *Lake Shore Duck Club* v. *Lake View Duck Club and others,* 50
Utah, at page 82, 166 Pac. at page 311, L. R. A. 1918B, 620.

*Hayes & Heppler,* of Richfield, for appellants.

*N. J. Bates,* of Richfield, for respondent.

GIDEON, J.

This is an action to determine conflicting claims to the use of the waters of two springs in Kane county, this state.

The state of Utah was made a party defendant. Neither pleading nor appearance, however, was made by the state and the trial court determined the issues between the plaintiffs and the defendant Schoenfeld without regard to the state's interest in the controversy, if it had any interest, and we shall so determine this appeal. In the course of the opinion whenever the word ''defendant'' is used reference is had only to the defendant Schoenfeld.

It is alleged in the complaint that the springs are located upon unsurveyed public land; that plaintiffs are the owners of a ranch and engaged in farming and stockraising in the vicinity of said springs; that the waters of said springs have been used by plaintiffs and their predecessors in interest for more than 20 years last past for watering cattle kept on plaintiffs' ranch, and that plaintiffs are the owners and in possession of the springs. Interference with that right by defendant Schoenfeld is alleged. Judgment is prayed that plaintiffs be declared the owners of the springs, and that defendant be enjoined from interfering with their use and enjoyment of the same.

The answer denies the ownership, possession, or right of possession in plaintiffs. By way of counterclaim Schoenfeld alleges his residence in Kane county; that he, by virtue of his residence, on the 3d day of April, 1920, initiated a squatter's right to 160 acres of the unsurveyed public lands in said county and state. The lands are described in detail. It is then alleged that there are two springs rising and flowing upon the lands above described; that defendant had made application to the state engineer to appropriate the waters of one of said springs under date of April 29, 1920, and had also made application to appropriate the waters of

the other spring by filing his application therefor in the state engineer's office in July following, that said applications were in good standing at the time of filing complaint. There are other allegations which we deem unnecessary to set out in this opinion.

The springs in question are located in a canyon running east and west, which canyon near its head divides, one branch running slightly to the southeast, and the other to the northeast. The springs in question are located in these small canyons, referred to in the record as "box" canyons. The plaintiffs' ranch is located some distance farther down the canyon, in fact near its mouth. The testimony shows that plaintiffs had occupied their ranch for about nine years, and prior to that time it had been occupied by others from whom plaintiffs obtained title. Plaintiffs and their predecessors had had cattle on the public domain for many years. Some witnesses testified that they had so had cattle from a date prior to 1900. The waters from the springs were used by plaintiffs and their predecessors in interest for watering stock running at large upon the public domain. Plaintiffs testified that prior to their occupancy and ownership of the ranch their predecessors in interest had constructed a trough where the springs came to the surface of the ground, and had there collected the water for the benefit of their cattle. The waters from the springs were not of sufficient volume to run to plaintiffs' land without artificial means of conveyance. It is undisputed that the range cattle of other stockraisers frequented these springs and drank therefrom. It is true that all of the testimony was to the effect that plaintiffs and their predecessors in interest owned a larger number of the cattle watering there, but there is no controversy that all stock running at large upon that range went to these springs for water.

It appears that in the year 1917 the plaintiffs had some work done on at least one of the springs in question in an effort to collect the waters, and there was some testimony to the effect that from 1913 to 1918 the waters of one of the springs, known as Sheep Spring, were run into a trough which had in the past been an old vat for dipping sheep.

In the year of 1919 plaintiffs caused two tunnels to be constructed, one at each of the springs, in an effort to develop water or ascertain the amount of water that could be developed from the springs in question. At that time certain pipes were placed in the canyons to carry the water down to what is referred to as "the ledge" with a view of collecting the same into a reservoir. The water so collected was never applied to any use save that of watering stock. Plaintiffs and their witnesses testified that it was the intention to carry the water down the canyon and attempt to irrigate a small acreage in an effort to grow an orchard, but that nothing was done in that line further than to place the pipe as above indicated. No application or filing was ever made by either the plaintiffs or their predecessors in interest with the state engineer claiming the water in question. Nor was there at any time any notice of intent to appropriate the waters in question posted or recorded either by the plaintiffs or their predecessors in interest.

At the close of plaintiffs' testimony defendant interposed a motion for nonsuit upon the grounds: (a) That the plaintiffs' testimony failed to show any appropriation of the waters of either spring sufficient in law to establish the right to the use of any of the waters whatever; (b) that the evidence failed to show that plaintiffs or their predecessors in interest ever made application to the state engineer, as provided by law, for the appropriation of any of the waters for agricultural or horticultural purposes, or that they had ever diverted and actually applied any of the waters whatsoever from either of said springs on any land for agricultural or horticultural purposes; (c) that the evidence fails to show that the plaintiffs had ever appropriated any of the waters of the springs for any purpose sufficient in law to establish a right to the use of any definite quantity of said waters or any water whatsoever. The court denied the motion, to which ruling defendant duly excepted.

From the record it appears that counsel for defendant then read the answer and counterclaim, and offered to produce evidence in support of the same. The court inquired of counsel for defendant if it was his contention that defend-

ant's interest in the springs is based upon the application made to the state engineer. That inquiry was answered in the affirmative. The court thereupon announced the view that the mere filing of the application was insufficient to give defendant any right or claim to the waters, and that no evidence could be introduced in support of defendant's claim until the state engineer had made some ruling upon the application. Counsel for plaintiffs then objected to the introduction of any evidence in support of the answer and counterclaim. The court sustained the objection. To these rulings defendant also excepted.

Findings of fact were made in favor, of plaintiffs and judgment was entered decreeing plaintiffs to be the owners, of the waters and perpetually enjoining and restraining the defendant from in any manner or at all interfering with the use and enjoyment of the waters of the springs and the whole thereof. From that judgment defendant appeals.

Consideration of the assignments of error based upon the court's denial of the motion for nonsuit and sustaining the objection to the introduction of any evidence on the part of defendant are sufficient for a determination of the legal questions presented by this appeal.

The proof fails to show any use or appropriation of the waters of the springs by plaintiffs or their predecessors in interest to the exclusion of others having stock running at large upon the public domain in their vicinity. In *Lake Shore Duck Club* v. *Lake View Duck Club et al.,* 50 Utah, at page 82, 166 Pac., at page 311, L. R. A. 1918B, 620, this court said:

"But for the purpose of effecting a valid appropriation of water under the statutes of this state we are decidedly of the opinion that the beneficial use contemplated in making the appropriation must be one that inures to the exclusive benefit of the appropriator and subject to his complete dominion and control." See, also, sections 759 et seq., 2 Kinney on Irrigation.

Plaintiffs' testimony, without dissent, shows that other stock owners having cattle on this range had enjoyed the same rights and privileges with respect to the waters of the springs here in question as did plaintiffs. In other

words, the ownership and use proven by the plaintiffs          1
were in no sense exclusive or subject to the complete
dominion and control of plaintiffs. We are therefore of
the opinion, and so hold, that the plaintiffs' testimony did
not show such appropriation or use of the waters of the
springs as would authorize the trial court to decree to
plaintiffs the use of the waters against defendant.

It is argued, however, that the work done by the plaintiffs looking to the development of the springs in 1919 by placing pipes to convey the waters to a place where the same could be gathered into a reservoir to be used in irrigating a small orchard is an appropriation entitling plaintiffs to the relief sought. The right to acquire unappropriated waters in this state is initiated by filing an application in the state engineer's office. It is provided by section 42 of chapter 67, Laws Utah, 1919, as follows:

"Any person who is a citizen of the United States or who has filed his declaration to become such, as required by the naturalization laws, or any association of such citizens or declarants, or any corporation, in order hereafter to acquire the right to the use of any unappropriated public water in the state of Utah, shall, before commencing the construction, enlargement or extension of any ditch, canal, or other distributing works, or performing similar work tending to acquire the said right or appropriation, make an application in writing to the state engineer. * * *"

The substance of that section was first enacted into law in 1903, section 35, c. 100, Laws Utah, 1903. With slight modification in the language the law as enacted in 1903 is found in section 42, supra. Prior to 1903 the statute provided for initiating the right to acquire unappropriated waters by posting and recording notice of the intended diversion. Section 1268, R. S. 1898. Subsequent to 1903 the right to appropriate any of the unappropriated waters was initiated by filing an application in the state engineer's office as is now provided by section 42, chapter 67, Laws Utah 1919. It has never been held, however, that the mere fact of posting and recording notice under the former statute alone constituted an appropriation of water. The sine qua non of making a valid appropriation is and was to apply the water attempted to be appropriated to some beneficial use. Nor

does the filing of an application in the state engineer's office in and of itself amount to an appropriation of          2 water. It at most gives to the applicant a right to complete the appropriation. Whenever such appropriation is finally consummated, the right, by the doctrine of relation, dates from the time of filing the application in the state engineer's office. Failure to post and record a notice, under the statute prior to 1903, and failure to make application in the state engineer's office, under the present statute, denies to the claimant the right to rely upon any work done or effort made in initiating or completing the appropriation antedating the completed appropriation.

In 2 Kinney on Irrigation and Water Rights (2d Ed.) § 730, the author says:

"It is also the universal rule of law upon the subject that by not posting or recording a notice, or the posting or recording of a faulty notice, the appropriator loses his right to apply the doctrine of relation from the time of the actual application of the water to some useful purpose back to the date of the posting of his notice, and he thus fails to shut off the rights of intervening claimants who have complied with the statute in this respect, and, therefore, his own rights to the use of the water, should there not be ample for all, may be cut off by those who have strictly complied with the statute. For the rule is that where an appropriator of water does not post and file for record his notice of appropriation as provided by law, his right dates only from the last act perfecting such appropriation, which, as we shall see in a subsequent section, is the actual application of the water claimed to some beneficial use or purpose."

It is argued on the part of appellant that under the provisions of section 41, chapter 67, Laws Utah 1919, the method therein prescribed for the appropriation of water is exclusive. That section reads as follows:

"Rights to the use of the unappropriated public water in the state may be acquired by appropriation, in the manner hereinafter provided, and not otherwise. The appropriation must be for some useful and beneficial purpose, and, as between appropriators, the one first in time shall be first in right; provided, that when a use designated by an application to appropriate any of the unappropriated waters of the state would materially interfere with a more beneficial use of such water, then the application shall be dealt with as provided in section 48 hereof."

It is therefore contended that as it conclusively appears that plaintiffs had made no effort to comply with the requirements of that section no rights had been acquired in the waters and that plaintiffs cannot now be heard to offer proof in support of their alleged right. We are not called upon to, neither do we at this time, determine whether the method provided for acquiring unappropriated waters stated in that section is exclusive of other means or ways of appropriating water.

Passing now to a consideration of the rulings of the trial court in sustaining the objections to the introduction of any evidence on the part of defendant. The answer denied the ownership or right to the use by plaintiffs of the waters in controversy. The counterclaim alleged that defendant had filed applications for the appropriation of these waters in April and July, 1920. It is also alleged that these applications were, at the date of filing the complaint, in good standing. True, these allegations of the counterclaim are denied by the reply. As pointed out, there is no proof that the waters had at any time been actually applied in irrigating land, or for any use or purpose other than watering stock. No actual appropriation of the water for agricultural or horticultural purposes had been made by plaintiffs prior to filing the applications by defendant. The posting and recording of notice, as required by the statute prior to 1903, or filing an application in the state engineer's office, gives the applicant an incomplete or inchoate right which the claimant can defend in a court of law. *Speer* v. *Stephenson,* 16 Idaho, 707, 102 Pac. 365; *Merritt* v. *City of Los Angeles,* 162 Cal. 47, 120 Pac. 1064. See, also, 2 Kinney on Irrigation and Water Rights, §§ 714, 716. The filing of the applications in the office of the state engineer did not give to defendant the right to have an adjudication that he owned or had the right to use the waters in conflict, but such filing did assure him the right to defend his right against the claims of plaintiffs. In other words, the fact that defendant had filed his application and that those filings were in good standing could be offered in evidence in defense against the claim for an injunction against defendant to restrain him

from in any way interfering with the waters of the springs.

It follows from what has been said that the judgment of the lower court must be reversed. Such is the order, and the cause is remanded to the district court of Kane county for further proceedings. Appellant to recover costs.

WEBER, C. J., THURMAN, FRICK, and CHERRY, JJ., concur.