## ADAMS et al. v. PORTAGE IRRIGATION, RESERVOIR & POWER CO. et al.

No. 5882.   Decided June 28, 1938.   (81 P. 2d 368.)

For former opinion see 95 Utah 1, 72 P. 2d 648.

*Thatcher & Young,* of Ogden, for appellants.

*B. C. Call,* of Brigham, for respondents.

*E. J. Skeen,* of Salt Lake City, for State Engineer, as amicus curiae.

LARSON, Justice.

Appellants have filed a petition for a rehearing and the State Engineer has filed a supporting brief as Amicus Curiae. Complaint is made that we upset the doctrine of statutory appropriation of public waters. The answer to

this contention is found in the following statement from the opinion, 95 Utah 1, 72 P. 2d 648, 654:

"If this be new or added water, no right thereto can attach or be asserted until after an application has been filed in the office of the state engineer. *Deseret Live Stock Co.* v. *Hooppiania*, 66 Utah 25, 239 P. 479; *Bountiful City* v. *De Luca*, 77 Utah 107, 292 P. 194, 72 A. L. R. 657. If it be considered as merely a change in place of diversion, it also must start with an application in the office of the state engineer."

What we did say was that the records (the pleadings of appellant and the evidence) show the waters in dispute, from which appellant sought to exclude respondents and the public generally, were waters which appellants had not appropriated, either by user before enactment of the statutory method, chapter 100, Laws Utah, 1903, now Rev. St. 1933, 100-3-1 et seq., or by application in the office of the engineer since such method was prescribed. The trial court so found, and we upheld that finding. Thus, holding that appellants had never had any rights to the waters used by respondents, the question of adverse user since 1903 is in nowise determinative of the cause.

We cannot better state the gist of the opinion than to quote what we therein stated:

"This action came about, not from any effort of plaintiffs to assert a right to waters which defendant Company has been diverting from Portage creek, nor from an effort of defendants to protect any waters they have heretofore diverted or used beneficially, but in the effort of defendants to bring new, further, and additional waters to their point of diversion, and the doing of which plaintiffs think infringes their rights and takes from them valuable rights which depreciates in an almost confiscatory way their private lands. It is defendants' plan and purpose to go up the natural channel far above their point of diversion and by means of excavations, cement boxes over springs, and pipe lines, convey all the water of the upper springs area down the canyon for three-quarters of a mile and thus save and increase the flow and amount of water at their point of diversion, thus recovering more water than they have heretofore diverted from the stream or beneficially used. * * *"

"No application was made to the state engineer either to appropriate this water or to change the point of diversion of their water. * * *"

"The right of respondents to take water for camp purposes from Portage creek and to water their sheep therein is a lawful right, recognized by the Constitution and the statute, unless in so doing they are appreciably decreasing the quantity or deteriorating the quality of the waters to the use of which appellants have a priority, a preferential right. * * *"

"It is admitted that defendants' works would inclose the entire stream now flowing in its natural channel, thus excluding everyone (the public) from enjoyment of all rights therein. When a person seeks to do this, he has the burden of showing his right so to do, and this burden appellants did not carry. * * *"

"Appellants, having admitted an attempt to interfere with and prevent respondents and the public generally from enjoying their rights incident to waters flowing in their natural channel, and having failed to show any superior right in themselves to the waters, any rights which would limit or curtail the rights of the public, are not in a position to complain because of the decree of the court."

The petition for a rehearing is denied.

HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

I dissent from the order denying the motion for a rehearing. The opinion on denying the petition for a rehearing sets out from the original opinion extracts which it denominates the gist of that opinion. While I have no serious objections to those quoted portions and to limiting the former opinion to them, I still think a contradiction is involved. The contradiction seems to lie in the fact that the first opinion considered the right of plaintiffs to rest on an adverse user. But from the quoted portions of that opinion, contained in the last opinion, it would seem that the defendants had no right in certain waters which they attempted to encase by pipe and that such waters were still in the public; hence, it seems contradictory to discuss a right of plaintiffs resting on the adversing of such waters. It would seem if

plaintiffs had any right at all such right would rest on facts showing a diligent appropriation of waters which defendants had not appropriated. Be that as it may, my doubts lie in regard to that portion of the opinion which holds that rights may be obtained by watering stock from the stream without diversion and that part which deals with obtaining a right to waters by adverse user.

Hitherto I expressly reserved from my concurrence any acquiescence in the principle that a diligence right even before 1903 could have been obtained by merely drinking from or watering stock in the stream without diversion. The briefs on rehearing strengthen my feeling that such cannot be done. It appears that in the case of *Bountiful City* v. *De Luca*, 77 Utah 107, 292 P. 194, 72 A. L. R. 657, we so held. In that case it was said (page 199) :

"Under our laws, rights in and to the use of public waters or of a natural stream or source, may be acquired only by appropriation and by an actual diversion of waters from the natural channel or stream and a beneficial use made of them and as by our statutes provided. Neither the defendants nor their predecessors made any diversion of the waters of the creek for watering live stock or for any other purpose. They, without any diversion, merely permitted animals to drink directly from the creek. That gave them no right to or possession of the use of the waters, for as said by the author, 2 Kinney on Irrigation and Water Rights, 1242, that as

" 'No possession or exclusive property (of water) can be acquired while it is still flowing and remaining in its natural channel or stream, it follows, therefore, that in order to obtain possession of the water attempted to be appropriated, it is an indispensable requisite that there must be an actual diversion of the water from its natural channel into the appropriator's ditch, canal, reservoir, or other structure.' "

The following cases also appear to hold to this doctrine: *Hutchinson* v. *Watson Slough Ditch Co.*, 16 Idaho 484, 101 P. 1059, 133 Am. St. Rep. 125; *McPhail* v. *Forney*, 4 Wyo. 556, 35 P. 773; *Walsh* v. *Wallace*, 26 Nev. 299, 67 P. 914, 99 Am. St. Rep. 692; *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59, 45 P. 472, 60 Am. St. Rep. 777; *Miles* v. *Butte Electric & Power Co.*, 32 Mont. 56, 79 P. 549.

In my dissenting opinion to the opinion denying the motion for a rehearing in the case of *Hammond* v. *Johnson,* 94 Utah 20, 66 P. 2d 894, I expressed doubt as to whether a right by a supposed adverse possession of a water right could be obtained against anyone. I am still of the opinion that such question should be re-opened and refer to my opinion in the Hammond Case for my reasons. But even under the doctrine which holds that adverse possession of a water right may be obtained by a user for seven years taken from the diversion ditch of the one against whom the adverse right is claimed, I cannot see how it can be claimed when the water is taken from the stream directly by drinking or watering stock. If the adverse right can be obtained against the sole appropriator of all the water in the stream, it may be obtained in a stream where there are a number of appropriators. The question then rises, who is adversed—all or some or one of the legitimate appropriators, or are they all adversed pro rata? If in this case the doctrine of adverse possession is extended so as to permit it to be acquired by watering stock directly from the stream without diversion, we introduce many troublesome problems.

Moreover, in this case I have doubts as to whether even the elements of adverse possession were present. As the State Engineer points out, the taking in this case was not sufficiently notorious to inform the appropriators of it. It could hardly have appeared to be more than mere trespasses. *Spring Creek Irr. Co.* v. *Zollinger,* 58 Utah 90, 197 P. 737; *Ephraim Willow Creek Irr. Co.* v. *Olson,* 70 Utah 95, 258 P. 216; *Smith* v. *North Canyon Water Co.,* 16 Utah 194, 52 P. 283. And I am not sure that the element of continuousness of use has been proved. I recognize that in the case of water, if there is such a thing as obtaining title by adverse possession, a continuous use may mean continuous in the manner needed and used over a period of years; that is to say, regularly recurrent.

I also doubt whether the element of exclusiveness has been sufficiently established. Those claiming adversely in-

cluded a group. I have doubt whether there could be a combination of persons watering their stock to establish an adverse user of the whole quantity used by the group. *Robinson* v. *Schoenfeld*, 62 Utah 233, 218 P. 1041. I fear that in this we have so extended the doctrine of adverse possession as to disturb the settled water law of decades. If the original decision can be supported on the language quoted from it in this last opinion, I think the original opinion should be withdrawn and a new opinion limiting the holdings to the matter contained in those quotations should be substituted or the petition for a rehearing should be granted.

FOLLAND, Chief Justice (dissenting).

I favor a rehearing for the reasons stated by Mr. Justice WOLFE.