## CENTER CREEK WATER AND IRRIGATION COMPANY, A CORPORATION, Appellant, v. JOHN A. THOMAS, Respondent.[1]

BILL OF EXCEPTIONS — SETTLEMENT OF — SEC. 3286, R. S. 1898 — OMISSIONS IN BILL — HOW CURED — SEC. 2289, R. S. 1898. RECITALS IN BILL OF EXCEPTIONS — NOT IMPEACHED BY MATTERS OUTSIDE. EQUITY CASE — CONFLICT IN EVIDENCE — FINDINGS AND DECREE — WHEN NOT DISTURBED.

1. *Bill of Exceptions — Settlement of — Sec. 3286, R. S. 1898 — Omissions in Bill — How Cured — Sec. 3289, R. S. 1898.*

    It is the duty of the trial judge, under Sec. 3286, R. S. 1898, to settle a bill of exceptions as briefly as possible, but if anything material is omitted, respondent may object to the settlement of the bill, and if his objections are disregarded, he must proceed under Sec. 3289, R. S. 1898; and when he fails to so proceed, and an examination of the bill of exceptions fails to show that any material proof has been omitted and no such omission is pointed out by counsel, this court can not refuse to consider the assignments of error.

2. *Recitals in Bill of Exceptions — Not Impeached by Matters Outside.*

    The recitals in a bill of exceptions can not be impeached in the appellate court by anything not contained in the record.

3. *Equity Case — Conflict in Evidence, Findings and Decree — When Not Disturbed.*

    In an equity case, although there is a conflict in the evidence, if there is evidence to support the findings and decree, this court will not disturb the judgment of the trial court which had opportunity to observe the witnesses on the stand, unless there is clear oversight or mistake on the part of said court.

(Decided April 28, 1899.)

Appeal from the Fourth District Court, Wasatch County, Hon. W. N. Dusenberry, *Judge.*

Action by plaintiff to restrain defendant from in any manner obstructing or interfering with the water of Cen-

---

[1] *Mc Kay* v. *Farr*, 15 Utah, 261 (approved); *Whipple* v. *Preece*, 18 Utah, 454 (approved).

ter Creek. At the trial a decree was entered fixing defendant's rights in the stream, awarding the balance to plaintiff, and restraining each party thenceforth from interesting with the other.

From such decree plaintiff appeals.  *Affirmed.*

*A. C. Hatch, Esq., J. H. McDonald, Esq.,* and *J. N. W. Whitecotton, Esq.,* for appellant.

*Samuel A. King, Esq.,* and *William Buys, Esq.,* for respondent.

BARTCH, C. J.

The plaintiff is a corporation organized and existing by virtue of the laws of Utah, and is engaged in the business of managing, controlling, and distributing, among its stockholders owning land along the stream, the waters of Center Creek in Wasatch County. The defendant also owns land adjacent to the stream, and claims that more than twenty years ago his grantors and predecessors in interest diverted and appropriated sufficient of the water of the stream, during the high-water period, to irrigate about twenty acres, and that he and they each year since, during such period, used the same adversely to the plaintiff and its stockholders, to irrigate said land. The plaintiff brought this action to restrain the defendant from in any manner obstructing or interfering with the water of the stream. At the trial, the court entered a decree, which entitled the defendant to the "use of sufficient of the waters of Center Creek from the first day of April down to the fifteenth day of June, in each and every year, to irrigate eighteen acres of land, and in addition thereto the use of all the waters" of a certain spring, the same being also in controversy herein. The court regulated the use of the water by the defendant, during such

period of time, by decreeing that he was entitled to a "stream of water flowing one hundred cubic feet per minute for forty-eight hours every twenty days," and to all the water of the spring. The balance of the water flowing in the stream during the irrigation season was awarded to the plaintiff, and each party was restrained from thenceforth interfering with the other in the use of his or its portion of the water.

The correctness of this decree is challenged by appeal, and the appellant appears to maintain that the material facts on which the decree was based were found on insufficient evidence.

Counsel for the respondent, at the outset, object to the consideration by us of any question based upon the insufficiency of the evidence, because, as they insist, the evidence is not set out in its entirety in the bill of exceptions, although this is a cause in equity. This objection is not well taken. The bill recites that it "contains all the evidence introduced at the trial of said cause," and is settled, allowed, and certified to as correct by the trial judge. There appears to be no exception in the record as to the ruling or findings of the court, respecting the contents of the bill. While it is true that the evidence is given in a narrative form, still, from an examination of it, we are unable to say that any material proof has been omitted. Nor is any such omission pointed out by counsel. If, however, there was anything omitted from the bill of exceptions, which the respondent regarded as material, then his counsel ought to have objected on that ground, to the settling of the bill until the correction was made. Then if the judge, in disregard of the objection, had settled the bill, counsel should have taken an exception to the ruling, and thereupon instituted proceedings in this court, as provided in Sec. 3289, R. S., to have the

bill corrected and settled in accordance with the facts. The omission from the bill, however, of mere immaterial matter is not a cause of complaint, for it is the duty of the judge in settling a bill of exceptions "to strike out of it all redundant and useless matter, so that the exceptions may be presented as briefly as possible." R. S., Sec. 3286.

Observing nothing in the bill which convinces us that material matter has been omitted, it having been duly authenticated, containing the recital as to all the evidence, and the respondent having failed to take an exception to the ruling of the court in the settlement of the bill, and to pursue the remedy pointed out by statute in such cases, we can not refuse to consider the assignments of error in the light of the evidence presented in the bill.

In *Whipple* v. *Preece*, decided at the present term, where a somewhat similar question was presented, this court said: "A bill of exceptions made up by the judge, aided by counsel of the respective parties, under the solemn sanction of the signature of the judge, properly authenticated, becomes a record, which, upon being filed with the clerk of this court, in the absence of proper proceedings to show the contrary, must be held to import absolute verity."

The recitals of such a bill can not be impeached in the appellate court by anything not contained in the record itself. 2 Enc. of Pl. & Pr. 423–425; *Whipple* v. *Preece*, *supra*. *Mc Grath* v. *Tallent*, 7 Utah, 256; *Vermillion* v. *Nelson*, 87 Ind., 194.

There being no sufficient reason shown for this court to disregard the evidence contained in the bill of exceptions, it becomes necessary to determine whether the facts found and the decree are supported by such evidence.

Counsel for the appellant insist that neither the 10th,

11th, nor the 12th finding is so supported. The 10th reads: "That more·than twelve years ago, the defendant, his grantors and predecessors in interest appropriated of the then unappropriated waters of Center Creek, in addition to a certain spring hereinafter mentioned, sufficient thereof to irrigate eighteen acres of land from the first day of April down to the 15th day of June of each and every year, and that this period is the high-water season."

The 11th: "That a stream of water flowing one hundred cubic feet per minute for forty-eight hours every twenty days during the said high-water season, to wit: From the first day of April down to the fifteenth day of June in each and every year, in addition to a certain spring hereinafter· described, is a quantity sufficient and necessary to properly and economically irrigate the defendant's said land."

The 12th: "That the defendant, his grantors and predecessors in interest have used said water from Center Creek from the first day of April down to the fifteenth day of June in each and every year since the said water was first appropriated by them, openly, adversely, uninterruptedly, and peaceably, as against all the world and particularly as against the plaintiff corporation."

The appellant insists that these findings are not justified by the testimony, and that the high-water season does not last until the fifteenth day of June of each year.

From the findings it appears that the water claimed by the defendant was appropriated more than twelve years ago, and they specify the quantity of water appropriated and necessary to properly irrigate the defendant's land, and the period of time during which, in each irrigation season, he is entitled to use it. The evidence shows that the defendant purchased the land from D. K. Bunnell in 1892, and that Bunnell had purchased fifteen acres of it

rom W. M. Ryan in 1883. Ryan, among other things, estified, that since he sold to defendant he had seen the land irrigated by the owner during the high-water season, every year, and had seen crops produced; that he was acquainted with the water of Center Creek; that there was probably three times as much water in it in May and a part of June as in the summer; that low water usually begins from the fifth to the fifteenth of June; that high water has never been controlled or distributed; and that with a stream a foot wide and a foot deep, running a hundred cubic feet per minute, it will take from thirty to thirty-six hours to water the defendant's fifteen acres of land."

The witness, D. K. Bunnell, testified: "I know the land of Mr. Thomas, the defendant. I owned the fifteen acres purchased from W. M. Ryan. I sold to John Thomas, the defendant, and had Ryan deed directly to him. When I took possession of the land, I went to work and made some ditches, and turned the water out and put in some lucerne seed and some wheat. I cultivated it from 1883 till 1889. I purchased from Ryan in 1883. I began then to irrigate it with high water from Center Creek. High water commenced about the first of May. I continued to water up as late as about the 17th or 18th of June. I irrigated in the neighborhood of nine acres of the fifteen. The rest I used for pasture and used high water on it. No one distributed high water to me. I went and took it, when I thought my crops needed it, till 1889. After my son farmed the land. I disposed of the land to Mr. Thomas in 1892. I constructed ditches for the fifteen acres. * * * I used high water always from the first of May till the 17th or 18th of June. No one distributed the water to me nor interfered with my use of it. I went and took it when I saw there was a flush of water. I

used the spring on my strawberries and a little garden I had. I never was interfered with in relation to the spring but once, when Mr. Blythe took it and I forbade him. I kept the ditch in repair. I consider that the water I used was necessary for the lands. When I began, there was surplus water in the creek."

The witness, James Lindsay, testified: "I have lived at Center Creek since February, 1879. Am familiar with waters of Center Creek and the lands of defendant, three quarters of a mile from me. Have observed the flow of Center Creek water. Ordinarily we have a flush of water in April, out of the foot hills; then it usually slacks up, and we have the principal part of our high water through the month of May, continuing up to the 10th or 15th of June, when it begins to recede. Any time after that we consider it low water. There are then three irrigating streams eighteen inches wide and five or six inches deep. I should judge in high water, there are ten or twelve such streams. About five hundred acres more land is irrigated in high-water season than in low. Five hundred and seventy-four acres are irrigated in low water. I was one of the incorporators of the company. I have used high-water eighteen years, and the company has never sought to control it. I acted as president of the corporation in 1893, 1894, 1895, and 1896. I knew of the defendant using high water during these years, and as president did not object. So far as I know, during these years, no instruction was given to the water master to control or regulate the high water. There was surplus water in Center Creek in the high-water season, before the company was incorporated. There have been times when there was more surplus water than was used. Tributaries of Center Creek have been conveyed into the reservoirs in May and June, which is high-water season.

Company controls the water usually from 10th to 15th of June."

The witness, Andrew Lindsay, testified:- "I have seen surplus water from the first of May to the 15th or 20th of June, on nearly everybody's farm. I mean by surplus water over and above three streams. It is necessary to irrigate these lands every ten or twelve days in the spring of the year with high water. To irrigate the whole fifteen acres of defendant's land with a stream of water flowing a cubic foot at the rate of 100 feet per minute, would require thirty to forty hours. There are at least twelve irrigation streams flowing in Center Creek in high-water season, from the 8th or 10th of May till along in June."

The defendant, testifying in his own behalf, said: "I purchased high-water right to the lands and reservoir, and spring also. I have used the high water on these lands. I was first interfered with in the use of the high water in 1896, about the first of June, when Mr. Goodwin, the watermaster, spoke to me about it. He said he was going to turn it off. I used the water from about the first of April till about the 15th of June. That is the high-water season. At that time, I should judge, there are twelve to fourteen streams in the creek. The water was during that period used by the people, and I used it when I pleased. Plaintiff never interfered with me prior to 1896, and did not distribute it to me then. I raised crops of grain and hay. I watered my land over about three times. I had a stream of water about a hundred cubic feet a minute. I took between thirty and thirty-six hours to water my fifteen acres, and twelve hours for the five acres. The water is necessary."

Other evidence of similar import is in the record, but further reference would be useless. It is clear that there is ample evidence to support the findings and decree. It

is true there is some contradictory evidence in the record, but that simply raises a conflict therein, and as the trial court has had an opportunity to observe the witnesses, — their demeanor on the stand, and the apparent candor and frankness with which they made their statements, — this court will not, in the absence of clear oversight or mistake on the part of the trial court, disturb the findings and decree. *McKay* v. *Farr*, 15 Utah, 261.

We find no reversible error in the record. The judgment is affirmed, with costs..

MINER, J., and BASKIN, J., concur.