UTAH POWER & LIGHT CO. v. RICHMOND IRR. CO. et al.

LEISHMAN et al. v. PULSIPHER et al.

No. 4992. Decided June 13, 1932. [12 P. (2d) 357]

*Stewart, Alexander & Budge,* of Salt Lake City for appellants.

*Thatcher & Young,* of Ogden, for respondents.

STRAUP, J.

In February, 1922, in an action wherein the Utah Power & Light Company was plaintiff, and the Richmond Irrigation Company, a corporation, and about three hundred or four hundred other companies, associations and individuals including all of the parties to this proceeding, were defendants or interveners, a judgment was rendered and entered in the First judicial district court, adjudging and decreeing the right, title, and interest of the parties in and to the use of all the waters of Bear river, including the waters of Little Bear river, a tributary thereto, and of Cold creek, a tributary to Little Bear river. The waters here involved are the waters of Pole creek. Of the waters of Little Bear river the court awarded to the Wellsville East Field Irrigation & Canal Company 30 c. f. s. with a date of priority of April, 1860, 15 c. f. s. with a date of priority of April, 1878, to the Hyrum Irrigating Company 3 c. f. s. with a date of priority of April 1860, 30 c. f. s. with a date of priority of May 1, 1860, 15 c. f. s. with a date of priority of April, 1878, a total to both of such companies

of 93 c. f. s., to irrigate about 6,000 acres of land; and to William Pulsipher and about seven other persons, 2.5 c. f. s. of the waters of Pole creek with a priority of May, 1888, to irrigate about 150 acres. The controversy is between the Wellsville, etc., Company and the Hyrum, etc., Company on the one side, and Pulsipher et al. on the other, as to the use of waters of Pole creek during the irrigation season, the former contending that the latter in violation of the decree took and used water from Pole creek which ought to have been permitted to flow into Little Bear river to supply the prior water rights awarded to the former. The waters awarded to the companies are used on lands in and around Hyrum and Wellsville, and the waters awarded to Pulsipher et al. are used on lands in and around Avon, all situate within a few miles of each other in the southern portion of Cache county.

It is the contention of the two companies that in July, 1928, the flow of the waters of Little Bear river was much less than the quantity of waters awarded to them, only little more than one-half thereof; that Pulsipher et al. were using all of the waters of Pole creek on their lands; that the companies demanded they desist using such waters and permit the whole thereof to flow into Little Bear river to augment the flow thereof, which Pulsipher et al. refused to do. Thereupon the water commissioner, J. A. Leishman, appointed by the state engineer at the request of the companies, turned all of the waters of Pole creek from the ditches of the Pole creek users back into the channel of Pole creek and permitted the flow to go into Little Bear river. The users of Pole creek diverted the waters back into their ditches. Thereupon the commissioner on behalf of himself and of the two companies, in the original cause, filed an affidavit alleging the violation of the decree by the Pole creek users, and upon such filing a citation was issued and served on them to show cause why they should not be punished for contempt. They answered but no hearing thereon was had. So, in 1929 a further application was made for an order to show cause

which was granted. In response thereto the Pole creek users answered admitting the use by them of all of the waters of Pole creek, claimed a right to do so, denied a violation of the decree, and sought a modification of the decree of 1922 on various grounds, among which on the ground that the decree was entered on stipulation of counsel for the power company and of various attorneys representing and claiming to represent all of the defendants and interveners, but that counsel claiming to represent the water users of Pole creek were not authorized to do so and represented interests of other defendants hostile and in conflict with the interests of Pole creek users who, as they alleged, ever since 1888 and until the decree was entered, as well as thereafter, for irrigation purposes, openly and exclusively and under claim of right and without objection used and were entitled to use all of the waters of Pole creek as a primary and paramount right over all others, and that they had no knowledge until 1928 that the decree subordinated their rights to prior rights of the two companies. They thus sought as against the two companies to have the decree so modified as to give the Pole creek users a prior right in and to all of the waters of Pole creek. They further answered that since the decree of 1922, the flow of Little Bear river though augmented by all of the waters of Pole creek during the irrigation season of each year was not sufficient to supply the quantity of waters awarded to the two companies, only a little more than one-half thereof, and that the water users of Pole creek, with the knowledge and consent of the two companies and without objection on their part until July, 1928, and under claim of right, openly, exclusively, and adversely used all of the waters each year during the irrigation season, for irrigation and other beneficial uses; that with such knowledge, and especially with knowledge of the companies and each of them that they since the decree during irrigation seasons had out of the flow of Little Bear river only a little more than one-half of the quantity of waters awarded them by the decree, and knowing that the Pole creek users each year

during the irrigation season without objection used all the waters of Pole creek for a period of more than six years, and by the failure of such companies to use any of such waters during such period and making no claim to the use thereof, they lost or abandoned whatever right, title, or interest in and to the waters of Pole creek was granted them by the decree, and that such waters thus became public waters subject to use and appropriation by others; and that in April, 1929, the Pole creek users filed an application in the office of the state engineer for the appropriation and use of all of the waters of Pole creek for the irrigation of their lands from July 1st to December 31st of each year, the filing of which was approved by the state engineer, and that such application was pending at the time of the hearing of this cause.

The commissioner and the companies denied the affirmative allegations of the answer and cross-complaints filed by the water users of Pole creek. At the hearing by stipulation of counsel the issues presented by the contempt proceedings were converted into a proceeding to hear and determine the rights, title, and interests of the parties in and to the use of the waters in controversy. On the trial, the court, on objections of the companies and on the theory of res adjudicata, held the water users of Pole creek bound by the decree of 1922 and refused evidence tendered by them to modify the decree as alleged by them. The court, however, permitted the parties to give evidence to show what right or interest, if any, the users of Pole creek acquired in and to the waters of Pole creek since the decree of 1922. At the conclusion of the evidence, the court dismissed the contempt proceedings, made findings, and rendered a judgment to the effect that the companies, for a period in excess of five years since the decree of 1922, had abandoned and ceased to use the waters of Pole creek and no longer had any right, title, or interest therein or thereto; and that the users of the waters of Pole creek by their filing had acquired an interest in and to such waters, and upon the completion of such

application, they as tenants in common were the exclusive owners of all right, title, and interest in and to the use of such waters.

From the judgment the companies and the commissioner appealed. The users of the waters of Pole creek also appealed (which is more in the nature of cross-assignments of error), complaining of the ruling denying them the right to give evidence to modify the decree of 1922. If the judgment be affirmed on the appeal of the companies, it is unnecessary to consider the appeal taken by the users of the waters of Pole creek. The chief complaint of the companies is that the findings are not supported by and are contrary to the evidence and that the conclusions of law and decree are not supported by the findings and are against law. In substance, the material portions of the findings are that Pole creek is a tributary of Little Bear river and that the waters thereof were adjudicated and decreed by the decree of 1922, whereby there were awarded to the Pole creek users 2.5 c. f. s. of the waters of Pole creek to be diverted at a designated place and to be used for the irrigation of 150 acres of land fully described, with a date of priority of May, 1888. By the decree there was awarded to the Wellsville, etc., Company and to the Hyrum, etc., Company, the quantity of waters of Little Bear river with dates of priority as hereinbefore stated, amounting to 93 c. f. s., to irrigate something over 6,000 acres of land. The court further found that in July, 1928, there was not a sufficient flow of water in Little Bear river to supply the quantity of water decreed the companies. Thereupon, the commissioner diverted all the waters from the ditches of the water users of Pole creek and turned them into the natural channel of the creek to flow down into Little Bear river but which waters by the Pole creek users were turned back into their private ditches; that the users of waters of Pole creek claimed they had the right to make such diversion, notwithstanding the provisions of the decree of 1922; that at the time of such diversion by the commissioner, the en-

tire flow of Pole creek and during the irrigation season in the months of July, August, and September of each year, rarely exceeded 1 c. f. s. and frequently was less; that the lands of the Pole creek users were arid and without water were of little value, but with the use of water were valuable for raising crops, and that the waters of Pole creek during the irrigation season of each year were insufficient in quantity to irrigate the lands of the water users of Pole creek. The court further found that since the decree of 1922, the water users of Pole creek, during the irrigation season of each year, used all of the waters of Pole creek to irrigate their lands, and that none of such waters flowed down or formed a part of Little Bear river, and that neither of the companies made any use of any of such waters during any part of the irrigation season; that during such season, and especially during the months of July, August, and September of each year since the decree of 1922, the total flow of Little Bear river was insufficient in quantity to supply the two companies with the quantity of water awarded them, and that the total flow of Little Bear river during all such period seldom exceeded 50 c. f. s. and frequently was considerably less; that the use of the waters of Pole creek made by the Pole creek users since 1922 was open, notorious, adverse, and under claim of right and with the knowledge and consent of the companies and each of them, and because of the failure of the companies and each of them to use or claim the waters of Pole creek for a period in excess of five years, their prior right to the use of waters of Pole creek as adjudicated to them in 1922 ceased and became forfeited and abandoned, in accordance with the provisions of Session Laws Utah 1919, chap. 67, § 6. The court further found that in April, 1929, the water users of Pole creek filed an application in the office of the state engineer to appropriate, from the 1st of July to the 31st of December of each year, all of the waters of Pole creek, to be used on their lands for irrigation and other beneficial purposes; that the application was by the engineer, ordered filed

and approved, and was pending and in good standing. The court further found that the waters of Pole creek were sufficient in quantity, when turned into and permitted to flow in its natural channel during the months of July, August, and September, to reach and "thereby somewhat increase the flow of Little Bear river."

Upon such findings the court reached the conclusion and adjudged that the companies had lost whatever right, title, or interest they had in and to the waters of Pole creek to augment the flow of Little Bear river, for the reason that they and each of them had abandoned and ceased to use or claim the waters of Pole creek for a period in excess of five years and had forfeited and abandoned any and all rights in and to the waters of Pole creek; and that the water users of Pole creek had acquired a present right, title, and interest therein, and upon the completion of their appropriation, by their filing in the office of the state engineer, were entitled to be come the owners as tenants in common in and to the use of all such waters.

We have a statute, Laws of Utah 1919, chap. 67, ██ § 6, which provides that:

"When an appropriator or his successor in interest abandons or ceases to use water for a period of five years, the right ceases, and thereupon such water reverts to the public, and may be again appropriated, as provided in this Act."

It in effect is claimed that the statute has here no application for the reason that the findings that the flow of Little Bear river during the irrigation seasons since the decree of 1922 and for a period of five years thereafter and before July, 1928, was substantially less than the quantity of water awarded the companies by the decree. Out of the waters of Little Bear river by the decree of 1922 there were awarded about 110 c. f. s. of water, of which 93 c. f. s. were awarded to companies and about 17 c. f. s. to others, all prior to the rights of the water users of Pole creek. The companies assert that while there is evidence to show that

on measurements made by the deputy state engineer in 1924, between July 23 and September 15, there were distributed to the two companies 44.1 c. f. s. of water out of Little Bear river, yet there was no evidence to show what quantity of water was distributed to them in any of the other years between 1922 and 1928. There is substantial evidence to show that by measurements made in 1924, 1925, and 1926, the total flow of Little Bear river during the irrigation season was only about 50 c. f. s.; that in July, 1928, the total flow was 44 c. f. s.; in July, 1929, it was 45.5 c. f. s.; and that in other years between 1922 and 1928 the flow during the irrigation season was about the same as in the years 1924, 1925, and 1926. There is no substantial evidence in the record to dispute that. Hence the contention of the companies that there is no evidence to show the quantity of water distributed to them each year between 1922 and 1928 is not well taken, for the reason that if the whole flow of Little Bear river had been distributed to them during such period out of Little Bear river the quantity distributed to them would have been only a little more than one-half of the quantity awarded them by the decree of 1922. On the record it is a very reasonable inference that the companies, during the irrigation seasons of such years, well knew that they were not receiving the quantity of waters out of Little Bear river awarded to them, and that if they had received the whole of such waters they would have received only a little more than one-half of the quantity of waters awarded them by the decree. Just as inferable is it that they also knew that the Pole creek users were farming and raising crops and using water for such purpose on their lands, and as shown by the record knew that the only source of a supply of water such users had was from Pole creek, and thus the companies knew that during the irrigation season the Pole creek users were using all of the waters of Pole creek and that they could not have raised crops without the use of such waters.

It, however, is argued that the companies may have as-

sumed that the commisioner in distributing water to them during the irrigation seasons distributed all the waters of Little Bear river, including those flowing from Pole creek, to all those entitled to use water out of Little Bear river; and if the commissioner did not do so and neglected to avail himself of the waters flowing from Pole creek to augment the flow of Little Bear river, such neglect may not be visited on or be chargeable to the companies. There is no evidence that the companies did so assume. No witness on their behalf so testified. Further the waters were not during the whole of such period distributed by the commissioner. Just how they were distributed when not distributed by him is not disclosed. No evidence was given by the companies to show what quantity of waters each year during the irrigation season was in fact received by them. Nor did the companies give any evidence to dispute that given by the water users of Pole creek as to the flow of Little Bear river, as heretofore indicated, or as to the use the Pole creek users made of the waters of Pole creek, or that any objection was made to their using such waters, until July, 1928.

We think the appellants have failed to show that there is not sufficient evidence to support the findings, or that the findings are against the fair preponderance of the evidence; nor have they pointed out any evidence upon which findings could properly be made contrary to the findings which were made. The only other question then remaining is whether as a matter of law the court was justified upon the findings made to render and enter the decree which was rendered and entered. We think it was. *Deseret Live Stock Company* v. *Hooppiania,* 66 Utah 25, 239 P. 479, and cases there cited; *Robinson* v. *Schoenfeld,* 62 Utah 233, 218 P. 1041.

The judgment of the court below is therefore affirmed, with costs to respondents.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.