WELLSVILLE EAST FIELD IRR. CO. et al. v. LINDSAY LAND & LIVESTOCK CO. et al.

No. 6404. Decided November 12, 1943. (143 P. 2d. 278.)

For former opinion, see 104 Utah 448, 137 P. 2d 634.

*Thatcher & Young,* of Ogden, for appellant.

*J. D. Skeen,* of Salt Lake City, and *Young & Bullen,* of Logan, for respondent.

WOLFE, Chief Justice.

The background facts are set out in full in the opinion reported in 104 Utah 448, 137 P. 2d 634. The evidence clearly shows that Nichols claimed the right to divert water from two points on Davenport Creek, which was a tributary to Little Bear River. Between his points of diversion and the plaintiffs' dam, where they take substantially all of the water from Little Bear and turn it into private canals, there apparently are several others who divert small quantities. Plaintiffs, on petition for rehearing, contend that there is not sufficient evidence to show that they were the appropriators who were being adversed by these diversions by Nichols; that it might equally well have been these various other users whose rights were being taken. It is further urged that a prescriptive right cannot be obtained to waters that have not been diverted from the natural stream by the appropriator.

These two contentions are interrelated and can be discussed together. It is the position of the petitioners that where, as in this case, an adverser makes diversions from a natural stream from which numerous other appropriators take their water, it cannot be ascertained ■ who is being adversed or whose water is being taken.

One of the requisites necessary to the acquisition of title by adverse possession is the requirement that the use by the adverse claimant be a clear invasion of the appropriator's rights—that it be hostile to him and under such conditions that he would have an opportunity to prevent it. As stated in *Smith* v. *North Canyon Water Co.*, 16 Utah 194, 52 P. 283, 286, to be adverse the use

"must have been accompanied by all the elements required to make out such adverse possession; the possession must have been actual occupation, open, notorious, hostile, and under a claim of title exclusive of any other right, continuous, and uninterrupted for a period of seven years."

Some courts have held that it is necessary that notice of the use be actually brought home to the owner whose right is being adversed; others have held that since the rules of "adverse use are punitive, to induce watchfulness," that it "is sufficient if the adverse use ■ was open and without attempt at concealment." Weil, Water Rights in the Western States, Vol. 1, Sec. 585. This court is apparently committed to the view that while it need not be shown that notice of the use was actually brought home to the owner so that he had actual notice of the claimed right, it is nevertheless necessary that the facts be such that it would be inferable that the owner knew of the adverse use. See *Utah Power & Light Co.* v. *Richmond Irr. Co.*, 79 Utah 602, 610, 12 P. 2d 357.

When a diversion by an adverser is made from the natural stream before the owner has reduced the water to possession, it might be at times impossible to ascertain whose water the adverser is taking. The fact situation might be such that it would not be inferable that the owner

had knowledge of the claimed adverse use. This situation is discussed in the case of *Campbell* v. *Wyoming Development Co.*, 55 Wyo. 347, 100 P. 2d 124, 102 P. 2d 745, 749, wherein it is stated:

"Furthermore, the adverse use must have been with knowledge and acquiescence of the *Development Company*, 67 C. J. 947-950. A man ought not to be deprived of his property unless he knows that another claims it and, knowing it, acquiesces. 2 C. J. 76. These factors are the sine qua (quibus) non of prescription. They constitute, as it were, the negative element thereof, without which the positive elements have no force or effect and round which the latter revolve. Thus, if an owner interrupts a possession—causes it to be non-continuous—that shows that he does not acquiesce therein. Open and notorious possession is necessary so as to convey knowledge, and give the owner an opportunity to protect his right—to determine whether he wants to acquiesce or not. It has often been stated that open and notorious possession gives rise to a presumption of knowledge. Kinney, Irrigation, 2nd Ed., p. 1879; 67 C. J. 949, 950. And the rule, generally speaking, doubtless is sound. Still, circumstances should have a bearing. A man who irrigated a garden which was situated so that it could not be readily observed from a highway did not, in *Britt* v. *Reed*, 42 Or. 76, 70 P. 1029, acquire a title by prescription to the water used by him, though he used it for the prescriptive period. Proximity and distance and opportunity to know should have a bearing in determining whether a man knows or not, and knowing acquiesces. In the case at bar, the lands of the Development Company are situated scores of miles distant from the lands of those situated on the Little Laramie— probably approximately 100 miles away. The use of water is not as readily observed as the possession of a piece of land. So the question arises whether or not the presumption of knowledge should follow in this case from the mere open use of the water in question. No case in which the owner and the adverse user have lived at great distance from each other has been cited to us in which a prescriptive title has been upheld. Counsel have contented themselves with calling attention to the general rule, without pointing out its applicability in the case at bar. And in this connection should be borne in mind the fact that the state has officials to regulate the distribution of water. The statutes of this state seem to take from the appropriators the burden of keeping a constant watch on the appropriators above them. * * * An appropriator has the right to presume not only that appropriators above them take only the amount of water to which they are entitled, but also that the officials who regulate and distribute the waters of the state do their duty."

Here this difficulty is not encountered. Practically all of the water below Davenport Creek on the Little Bear is diverted by the plaintiffs into their private canals. Ever since the Kimball Decree in 1922 Nichols has used this water each and every year. In the presence of officials of the various plaintiff companies, he has asserted the right to and given them notice that he intended to continue to use it. Wilson testified that he, in the capacity of president of Hyrum Irrigation Company, went up to the Nichols property to check on the water; he further stated that they turned it off whenever they discovered that Nichols was using it.

Under the record there can be no doubt but what the plaintiffs knew as early as 1925 that Nichols claimed the right to use the water from Davenport Creek. There is equally no doubt but what the plaintiffs acquiesed in this use at times and at other times undertook to stop his use of this water. His use of the water was open and notorious and under claim of right. The whole trial proceeded on the theory that Nichols, by using this water, was depriving the plaintiffs of it. It was upon this theory that plaintiffs asked for an injunction. After asserting throughout the trial in the lower court and in their brief on the appeal that Nichols had been using their water, plaintiffs cannot be now heard to say that the evidence did not show whose water Nichols had been taking.

Here all of the water is diverted from Little Bear by the plaintiffs. If only part of the water were diverted by the plaintiffs and rest were permitted to run on down Little Bear to numerous other appropriators many miles distant from Davenport Creek, we might have a different problem. The writer doubts that the doctrine of adverse user should as a general rule be applied to diversions from the stream running in its natural channel. Water in the natural channel is fugitive water which has not yet been reduced to possession. Under the adjudi-

cated cases it is generally held that water which has not been diverted from the natural channel and reduced to possession is still public water for the appropriation has not been completed. See *Tanner* v. *Provo Reservoir Co.*, 99 Utah 139, 98 P. 2d 695; Kinney, Irrigation and Water Rights, p. 1242; Hutchins Law of Water Rights in the West, p. 303. All the appropriator has is the right to reduce the water to possession. It is not a right to any particular water, but merely a right to divert a definite quantity from this public flow. After a portion of the water has been reduced to possession in storage reservoirs, canals, ditches, etc., the elements of adversity can be more easily identified. It can, in such cases, be readily determined whose water is being taken, notice on the part of the owner can be ascertained, etc. It is to be doubted whether the elements necessary to the acquisition of title by adverse possession can be made out by showing a diversion of public water before it has been reduced to possession so as to complete the appropriation. It might well be a sounder rule to hold that the process of adversity must operate on the owner's possession and that it cannot operate on his inchoate right to reduce the water to possession by making a diversion from the public flow.

This question was not raised during the trial or on appeal. It was thrown out for the first time on petition for rehearing and is not fully developed by counsel. The majority of the court believes that, at least on the facts of this case, title by adverse user was proved by showing a diversion from a public stream. The case of *Utah Power & Light* v. *Richmond Irr. Co.*, supra, involved a physical lay out almost identical with the one involved in this case. We there upheld, without discussing this question, the decision of the lower court holding that title by adverse use was made out by showing a diversion of water from Pole Creek, a tributary to Little Bear. There has been several other cases in this jurisdiction in which the doctrine of adverse use was applied to diversions of water from a stream running in

its natural channel. See *Spring Creek Irr. Co.* v. *Zollinger,* 58 Utah 90, 197 P. 737; *Ephraim Willow Creek Irr. Co.* v. *Olson,* 70 Utah 95, 258 P. 216; *Center Creek Water & Irr. Co.* v. *Thomas,* 19 Utah 360, 57 P. 30. This question was not raised in any of these cases, and we do not know how the court would have held had these matters been raised. However, for nearly 50 years we have affirmed titles based on adverse use where the claimed use constituted a diversion from a stream running in its natural channel. No unusual complications have thus far arisen because of such an application of the doctrine so it would seem that the fears of the petitioners are not well founded.

Petition for rehearing denied.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

HOYT, District Judge (dissenting).

For reasons given in my former opinion in this case I think a rehearing should be granted.

PRATT, J., on leave of absence.