361 P.2d 407

In the Matter of the General Determination of all the Rights to Use of Water, both Surface and Underground, Within the DRAINAGE AREA OF BEAR RIVER IN RICH COUNTY, Utah.

RICH COUNTY–OTTER CREEK IRRIGATION COMPANY, and William T. Rex, et al., Plaintiffs and Respondents,

v.

Grant LAMBORN, Howard L. Lamborn and Keith Jessop, Defendants and Appellants.

No. 9285.

Supreme Court of Utah.

April 20, 1961.

Clyde & Mecham, Salt Lake City, for appellants.

L. DeLos Daines, Salt Lake City, David R. Daines, Logan, Zachary T. Champlin, Logan, for respondents.

WADE, Chief Justice.

This suit was commenced by the state engineer for a general determination [1] of the water rights within the drainage area of Bear River in Rich County, Utah. Grant Lamborn, Howard L. Lamborn and Keith Jessop, appellants herein, are the successors in interest in a ranch and the water rights thereto of James Jackson, located near the head of the south and middle forks of Otter Creek, which arises in the mountains west of Woodruff and drains toward the east into the Bear River. The state engineer proposed a decree awarding appellants, the Lamborns and Jessop, a water right for 355 acres from the south and middle forks of Otter Creek. A protest to this proposed adjudication was filed by Rich County-Otter Creek Irrigation Company, and by the individual stockholders thereof who are respondents here. The trial court awarded to appellants, Lamborns and Jessop, a primary water right for 355 acres until June 1st, but reduced the award from June 1 to the end of the irrigation season to only 180 acres. The Lamborns and Jessop appeal from this reduction and the respondents cross-appeal from the award of a primary right of more than 180 acres prior to June 1st.

There is also a north fork to Otter Creek, from which William T. Rex, one of the individual stockholders of the Rich County-Otter Creek Irrigation Company, diverts most of his water. Rex also diverts some

1. See 73-4-1 to 24 incl. U.C.A.1953, especially sec. 73-4-11.

**4**

water from the south and middle forks of Otter Creek, but the Jackson Ranch is so located that it cannot divert any water from the north fork. Much of the land of the respondents, which is located below the conflux of the three forks, also has a water right from the Woodruff Canal.

In December of 1919 these same water rights were litigated and the predecessor of appellants, the Lamborns and Jessop, was awarded only a 180-acre water right. Both sides to this controversy claim and were awarded greater water rights than were awarded to them or their predecessors under the former decree. These claims are based mostly on adverse user or a water right by prescription. Before considering the evidence on adverse use or prescription of the various parties in this action, we note that there are other somewhat similar means of losing water rights. First, a water right may be forfeited by a nonuser for a period of five years, pre-viously seven years, under our statute.[2] Although the statute uses the term "abandon or cease to use water for a period of five years," we have recognized that abandonment is a separate and distinct concept from that of forfeiture in that an abandonment requires a definite intent to relinquish the right to use and ownership of such water right and does not require any particular period of time, but the forfeiture herein provided for requires that the appropriator cease to use the water for a period of five years before it is complete.

Both the concept of abandonment and forfeiture of water rights are different from the water right which an appropriator may lose to another by prescription or adverse user. The abandonment of a water right to the public the same as the abandonment of any other property or right requires that a prior appropriator intentionally release or surrender such right to the public.[3] To thus lose a water right does

2. See 73–1–4, U.C.A.1953: "When an appropriator * * * shall abandon or cease to use water for a period of five years the right shall cease and thereupon such water shall revert to the public, and may be again appropriated as provided in this title * * *."

Sec. 9, Ch. 20, Laws of Utah 1880: "* * * a continuous failure to use any right to water, for a period of seven years, * * * shall be held to be an abandonment and forfeiture of such right, * * *." Same C.L.U.1888, sec. 2783.

Sec. 1262, R.S.U.1898, follows closely present law above quoted with additional provision, "* * * but questions of abandonment shall be questions of fact, and shall be determined as are other questions of fact." Same as sec. 1288x-23, C.L.U.1907, and 3468, C.L.U.1917, but sec. 6, Ch. 67, Laws of Utah 1919, eliminated the provision making abandonment a question of fact and reduced the forfeiture period from "seven" to "five" years.

3 Deseret Live Stock Co. v. Hooppiania, 66 Utah 25, 239 P. 479; Hammond v. Johnson, 94 Utah 20, 66 P.2d 894, and annotations of the statutes cited in note 2.

not necessarily depend on this statute nor require nonuse of such right for any particular length of time. A forfeiture of such a right under this statute, however, does require a non-user of such water right for the statutory period.[4] The loss of a water right by either of these methods does not contemplate the transfer of a water right from one person to another. But a right to use water which is lost by prescription or adverse user is in effect a passing of such water right from the original appropriator to the adverse user. Such transfer requires adverse use with the original owner's acquiescence. This means that the original owner neither interrupts nor asserts his right to interrupt by expressly permitting such use.[5] In other words, such use must be open and notorious and against the original appropriator, that is, under a claim of right, and not under the original appropriator but adverse to him and without his interruption or permission.[6]

Proof of water right by adverse use is difficult. Our territorial statutes recognized such a right as did our judicial decisions after statehood until made ineffective thereafter by the 1939 Legislature.[7] So appellants could acquire water

4. See Note 3.
5. Wellsville East Field Irr. Co. v. Lindsay Land & Livestock Co., 104 Utah 448, 137 P.2d 634, rehearing denied 104 Utah 498, 143 P.2d 278; Hammond v. Johnson, note 3, rehearing denied 94 Utah 35, 75 P.2d 164; Utah Power & Light Co. v. Richmond Irr. Co., 79 Utah 602, 12 P.2d 357; Ephraim Willow Creek Irr. Co. v. Olson, 70 Utah 95, 258 P. 216; Spring Creek Irr. Co. v. Zollinger, 58 Utah 90, 197 P. 737; Center Creek Water & Irr. Co. v. Thomas, 19 Utah 360, 57 P. 30; Manning v. Fife, 17 Utah 232, 54 P. 111; Utah Power & Light Co. v. Richmond Irr. Co., 80 Utah 105, 13 P.2d 320.
6. Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 170 A.L.R. 770; Griffiths v. Archibald, 2 Utah 2d 293, 295, 272 P.2d 586, 587, dissenting opinion; Harvey v. Haights Bench Irr. Co., 7 Utah 2d 58, 318 P.2d 343; Big Cottonwood Tanner Ditch Co. v. Moyle, 109 Utah 197, 159 P.2d 596, rehearing 109 Utah 213, 174 P.2d 148, 172 A.L.R. 175; Cache Valley Banking Co. v. Cache County Poultry Growers Ass'n, 116 Utah 258,

209 P.2d 251; Jensen v. Gerrard, 85 Utah 481, 39 P.2d 1070; Sdrales v. Rondos, 116 Utah 288, 209 P.2d 562; Lunt v. Kitchens, 123 Utah 488, 260 P.2d 535.

7. Sec. 6, Ch. 20, Laws of Utah, 1880: "A right to the use of water * * * is hereby recognized * * * Second— Whenever any person or persons shall have had the open, peaceable, uninterrupted and continuous use of water for a period of seven years."
   Same provision, sec. 2780, s6, C.L.U. 1888. We find no similar statutory provision since statehood but we have continued to recognize the validity of water rights acquired in that manner before the 1939 statute which follows, was enacted. See note 5.
   Sec. 73–3–1, Laws of Utah 1939. " * * * No right to the use of water either appropriated or unappropriated can be acquired by adverse use or adverse possession." Since then this provision has been a part of our statutes and is now a part of section 73–3–1, U.C.A. 1953.

rights by adverse use only by continuous adverse use for seven years after the 1919 decree and before the 1939 statute. A person claiming such a right has the burden of convincing the trial court of all of the necessary facts to establish his claim.[8] This being an equity case we will only reverse the trial court's findings of fact if we conclude that they were clearly wrong.[9]

A prescriptive right to use a prior appropriator's water right is different from both a prescriptive easement to use land[10] and the title to land by adverse possession.[11] Both these prescriptive rights to land are different in many respects from each other.

■■■ Title to land by adverse possession requires continuous exclusive possession of a specific tract of land under a claim of right and not by permission and without interruption by the previous owner and with the payment of all taxes levied against such land for a period of seven years. Adverse use of a water right, however, does not require possession of a specific body of water. It, however, does require exclusive beneficial use of a prior established water right of another in a stream or natural water source. Such adverse use must preclude and deprive the prior appropriator of the beneficial use of his water right continuously for seven years, but not necessarily a continuous flow of water.[12] This adverse use also must be under a claim of right and without interruption by the prior appropriator and not merely with his permission. A water right thus acquired, though in many respects different, is similar to a prescriptive easement or right of way over land in that in both cases only a right to use is acquired.[13] However, adverse use of a water right requires an exclusive beneficial use by the adverser which is not required by a prescriptive easement. A prescriptive easement also requires 20 years of adverse use.[14]

■■■ There is a great variation in the quantity of water available in streams from season to season and year to year. Usually there is a spring runoff during which there is ample water to supply all the needs of

8. Wellsville East Field Irr. Co. v. Lindsay Land & Livestock Co., and other cases cited in note 5.

9. Constitution of Utah, Art. VIII, sec. 9, and annotations on appeals on questions of fact in equity cases. Rich v. Stephens, 79 Utah 411, 11 P.2d 295.

10. See cases cited in note 6.

11. For statutes of limitations dealing with this problem see secs. 78–12–5, 6, 7, 8, 9, 10, 11 and 12, U.C.A.1953 and Pocket Supplement to Vol. 9, U.C.A.1953, Tax Title, secs. 78–12–5.1, 2, 3, secs. 78–12–7.1 and 78–12–12.1.

12. See cases cited in note 5.

13. See cases cited in notes 5 and 6.

14. See cases cited in note 6.

all users. This period ends much later some years than others, and even in a dry season a heavy rain may so saturate the ground that immediate irrigation thereafter would be nonbeneficial.[15] Water systems are constantly being improved to conserve water. The water which is diverted and used to irrigate higher ground often returns to the stream by direct flow and by seepage and percolation for a later use below. Beneficial use is the basis, the measure and limit to all water rights,[16] and a prior appropriator cannot rightfully deprive another of a beneficial use of water when he is unable to beneficially use such water himself. In some cases all the water of a stream is divided into regular turns. In others the stream is apportioned among the various systems and different users, and often the water users of an irrigation system can arrange to have their turns in accordance with their convenience and needs. Under some of these systems, particularly where a whole stream is divided into regular turns, it is much easier to show adverse use than in others.

▉ Appellants contend that the trial court's award to them of only a 180-acre water right after June 1st was clearly contrary to the evidence. They claim to have acquired this additional water right by adverse use. To support their claim they rely on the preliminary survey of the state engineer and the oral testimony that they had under cultivation and irrigation 355 acres. They further urge that the complete lack of testimony that the entire streams were ever turned down to respondents during the claimed adverse user period and that the most that was done was to adjust the division of the streams between plaintiffs and respondents shows that their adverse use was never interrupted.

These arguments overlook the fact that physical evidence of cultivation and irrigation of 355 acres of land does not necessarily prove adverse use of respondent's water rights for a full season or up to July 1st of each season. This evidence completely fails to show that respondents, after June 1st were being deprived of the use of the water right which was awarded to them. It might well be, and the evidence so indicates that only a small portion of the land in question required late water. There was testimony to the effect that during many of the years there was ample supply of water for all users, but when there was a water scarcity, some disputes arose and during real dry years, the available waters were distributed voluntarily and with the consent of the users to take care of only the most vital needs. Under such circumstances there would be no adverse.

15. Spanish Fork West Field Irr. Co. v. United States, 9 Utah 2d 428, 347 P.2d 184.

16. Section 73-1-3, U.C.A. 1953 and case annotation thereto.

use by appellants which would give them a right to use the water previously owned by the respondents. Further, the failure of the respondents to show that they ever required appellants to turn all the water down to them, but that at most the parties merely adjusted a division of the streams does not show adverse use by appellants of respondents' water rights. This is particularly true since appellants, under this decree, were entitled during the entire season to a prior 180-acre water right with a priority of 1870 as compared with the 1875 priority for respondents. So an adjustment of the stream was the most that the respondents could require under their adjudicated water right. Our study of the record clearly indicates that the trial court's decision was amply supported by the evidence.

Respondents cross-appeal from the award to appellants of a 355-acre water right up to June 1st. Their claims in this regard are consistent with the facts above pointed out, that the fact that appellants used 355 acres, especially during the early part of the season, does not necessarily show that such use was adverse to respondents' rights or deprived them of the use of their early water. There is much divergent testimony and different views expressed by different witnesses. The evidence, however, is precise and positive, and there is little dispute that appellants had an uninterrupted use of ample water during the early season up until June 1st. And the trial court concluded

that such use was adverse to respondents. The evidence that the respondents were deprived of their prior water rights during that period is not strong, but after considerable study, we conclude it is sufficient.

Decision affirmed. Costs to respondent.

McDONOUGH and CROCKETT, JJ., concur.

HENRIOD and CALLISTER, JJ., concur in result.