363 P.2d 499

**Paul E. REIMANN and Maybeth Farr Reimann, Plaintiffs, Respondents and Cross-Appellants,**

v.

**W. B. RICHARDS, Jr., A. Z. Richards, and A. Z. Richards as Agent For Applicants in Application No. A–1810; and J. Roy Free, Defendants, Appellants and Respondents on Cross-Appeal.**

No. 9340.

Supreme Court of Utah.

July 14, 1961.

———◆———

Clyde & Mecham, Salt Lake City, for appellants.

Paul E. Reimann, McKay & Burton, Reed H. Richards, Salt Lake City, Walter L. Budge, Atty. Gen., Dallin W. Jensen, Richard R. Boyle, Asst. Attys. Gen., for respondents.

WADE, Chief Justice.

This is an appeal from a decision of the district court approving seven applications by Paul E. Reimann and wife to appropriate for beneficial use in Section 22 the upper waters of Mountair Canyon. Mountair Canyon joins Parley's Canyon from the south at a point a few miles east of the mouth of Parley's Canyon where it emerges from the mountains southeasterly from Salt Lake City. Below Section 22, now owned by the Reimanns, Mountair Canyon weaves around for a number of miles through Sections 15, 16 and 17, most of which is now owned by A. Z. Richards and Associates,

the protestants in this action. The waters of Mountair Canyon, after merging with Parley's Canyon waters empty into Salt Lake Valley.

The Reimann's predecessors in Section 22 were named Pratt. They obtained the U. S. patent and also diligence water rights to irrigate some of the land and for domestic use in summer homes and a restaurant. Later these water rights of the Pratts were forfeited to the public for nonuse under our statute [1] before the Reimanns obtained their interest in Section 22. There is no evidence or claim that anyone succeeded to these rights of the Pratts by adverse use.[2] There are no applications to appropriate Mountair Canyon water filed with the State Engineer except those filed by the Reimanns.

The protestants, Richards and Associates, appellants here, are the successors of one Echman, who transferred his rights in the lands and water in question to Sorenson, Hansen, Richards and others before 1903. Originally this water was used to irrigate small meadows, spring and swamp areas. Later a change application to use the water for five summer homes was granted. Now more than 40 summer homes use these

---

[1]. See Sec. 73-1-4, U.C.A.1953: "When an appropriator * * * shall * * * cease to use water for a period of five years the right shall cease and thereupon, such water shall revert to the public and may be appropriated as provided in this title * * *." For history of this enactment see General Determination of

Water Rights. In re Drainage Area of Bear River (Rich County-Otter Creek Irrigation Co. v. Lamborn and Jessop), 12 Utah 2d 1, 361 P.2d 407.

[2]. See General Determination of Water Rights. Rich County-Otter Creek v. Lamborn and Jessop cited in note 1.

waters originally appropriated by the predecessors of the protestants for domestic purposes from Mountair Canyon Creek. The Richards and Associates' Rights to use this water as against Salt Lake City was approved in Salt Lake City v. Pleasant View Irrigation Company in 1912. Salt Lake City did not protest the Reimann applications, nor is it a party to this action, and neither the previous action nor this one is a general adjudication of the water rights of the Mountair stream. The Reimanns' predecessors were not parties to the Salt Lake City v. Pleasant View Irrigation Company action, and the rights between those parties were not adjudicated in that case.

Mountair Canyon weaves around through a rather steep mountainside. The terrain is generally well covered with trees, grasses, shrubbery and plant life. The slope being toward the north and not subject to the direct sunrays, the canyon retains more moisture than it otherwise would. The whole canyon has an unusually large amount of rainfall from year to year, there being evidence that an average of 35 inches of moisture falls there per year. There are many side canyons entering Mountair Canyon, some larger and others smaller. In many instances the underground formation cuts off the flow of the water, thereby creating swamps, meadows and spring areas above. During the driest season the waterflow down the canyon is small. However, the stream is a gaining one; that is, it constantly increases from the head of the canyon on the north side of Section 22 to where it joins Parley's Canyon Creek.

The trial court heard a lot of evidence, both expert and otherwise. It had the opportunity of hearing the witnesses and observing their demeanor while testifying, which gives it an advantage over this court in evaluating the reliability of such evidence. Although this is an equity case, where we must review the evidence,[3] we do not reverse the trial court unless we conclude that its findings were clearly wrong.[4] The trial court approved seven of the eight applications and rejected only one. We should affirm the trial court's approval of these applications if from the evidence we find probable cause to believe that there is unappropriated waters available for appropriation, and that the applicants can make the appropriation without interfering with prior rights to the use of water in that canyon by others.[5]

From our study of the evidence we find that the trial court's findings are amply

3. See Constitution of Utah, Article VIII, Section 9, and cases cited to notes thereto.
4. See note 3.
5. See Section 73-3-2, U.C.A.1953 and authorities therein cited: also East Bench Irrigation Co. v. Deseret Irr. Co., 2 Utah 2d 170, 271 P.2d 449; same case on rehearing, 5 Utah 2d 235, 300 P.2d 603; Little Cottonwood Water Co. v. Sandy, 123 Utah 242, 258 P.2d 440.

supported by the evidence. So we approve the trial court's findings without detailed discussion of the evidence, approving the seven applications, and we reject the one application which the trial court rejected.

Judgment is affirmed, each party to bear his cost.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.